454 So.2d 556 (1984)
David GORHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 62882.
Supreme Court of Florida.
July 19, 1984.
Rehearing Denied September 18, 1984.
*557 Michael D. Gelety, Fort Lauderdale, for appellant.
Jim Smith, Atty. Gen. and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
This direct appeal from conviction of first-degree murder and sentence of death is before us pursuant to article V, section 3(b)(1). We affirm the conviction and sentence.
The body of Carl Peterson was found in a bathroom inside a warehouse on the evening of October 30, 1981, by officers of the Pompano Police Department. The officers were accompanied by Kenneth Gardner, an inmate of Pompano Correction Center who, while returning from work-release, had seen two men at the warehouse and soon after had heard shots. Peterson's pockets had been pulled inside-out and various papers and Peterson's wallet were found near the body. Peterson had been shot twice with .38 caliber ammunition.
The next day, Carl Peterson's credit cards were used at various stores in the area. The phone number on the receipts led police to Moses Jordan, who in turn directed the police to appellant's cousin. From the cousin, police learned that appellant matched the descriptions provided by store clerks of the man using the credit cards. Appellant's fingerprints were on file and matched a fingerprint found on one of Peterson's papers. Also, two of the store clerks were able to positively identify appellant from a photograph.
Police investigation led to an apartment rented by Diane Walker, where appellant lived with Walker's mother. Upon searching the apartment, with Walker's permission, the police found some of the purchases charged to Peterson's credit cards *558 and .38 caliber bullets. After his arrest by the Pompano police, appellant made three tape-recorded statements.
He was tried and found guilty, but a mistrial was declared before sentencing. On retrial, the victim's wife testified that her husband was in the habit of carrying large sums of money. Ada Johnson testified that appellant had attempted to rent an apartment from her, had shown her a pistol and promised to get the approximately $600 he would need for rent and deposits. Both Gardner and Johnson testified to having seen a man run from the scene of the crime. Gardner said the appellant was definitely not the man; Johnson testified she could not see the man's face, but that she thought it was the appellant.
The jury found appellant guilty of first-degree murder and attempted robbery and recommended a life sentence. The judge overrode the jury recommendation and imposed the death penalty and a fifteen-year sentence for attempted robbery.
Appellant raises nine points in appealing the conviction, only one of which merits discussion. Before the first trial, Gorham filed a motion in limine to prevent the state from presenting evidence of other criminal activity by the defendant. Specifically, Gorham objected to extensive evidence of the use of the victim's credit cards, claiming it would simply put his character at issue and tend to show a criminal propensity. The trial court ordered that evidence of Gorham's use of the cards would be admitted but should not become a major feature of the trial. At trial, Gorham offered to stipulate possession and use of the cards before evidence of every purchase was presented by the prosecution.
On appeal, Gorham contends that the presentation of six witnesses who testified to Gorham's use of the victim's credit cards and identified the items purchased with those cards was a major feature of the trial and was unduly prejudicial. The state replies that the discovery of some of the merchandise in the same closet as the box of bullets identical to those which killed Peterson was an important link in the largely circumstantial case against Gorham. Appellant concedes the relevance but argues that the stipulation, if accepted, would have served the prosecution's purpose and would have avoided prejudicing the jury against Gorham because of irrelevant character evidence.
First, we note that the evidence presented is not similar-fact evidence and thus does not fall within the Williams rule, Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). The evidence adduced by the prosecution witnesses did not bring before the jury unrelated bad acts of the appellant, rather it served to link the appellant to the victim circumstantially. Neither is this character evidence, which is offered to show that appellant acted in conformity with past character, as proscribed in section 90.404, Florida Statutes (1981).
We must therefore weigh the danger of unfair prejudice to the defendant against the admitted relevance of the evidence. § 90.403, Fla. Stat. (1981). Not only was the defense willing to stipulate to the purchases Gorham made with Peterson's credit cards, the prosecution later submitted into evidence Gorham's own taped statements detailing his shopping spree. To the extent the testimony of the shop assistants who processed these purchases and the merchandise itself reflected on Gorham's character, it was illustrative only of greed, not of a propensity toward violent crime. The jury's unfair prejudice against Gorham, if any, which the evidence would promote would have been reflected in its findings on the second count of the indictment, the robbery charge. In fact, the jury convicted Gorham only of the lesser-included offense of attempted robbery. While we do not necessarily approve the repetitious and cumulative nature of the evidence of the purchases in the state's case, we do not find any prejudice to the defendant which outweighed the evidence's relevance to the state's case.
We have considered the other eight points raised and find them meritless. We have thoroughly examined the entire *559 record and find that the evidence more than sufficient to support appellant's convictions, and we find no error which would require reversal. Accordingly, the convictions for first-degree murder and for attempted robbery are affirmed.
Appellant takes issue with the trial court's imposition of sentence for both the murder and what appellant characterizes as the underlying felony, attempted robbery. However, the evidence presented was clearly supportive of a finding of first-degree premeditated murder; the attempted robbery was an accompanying felony, not a felony necessary to a conviction for felony murder. Breedlove v. State, 413 So.2d 1 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982); State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). We find no error.
In imposing the death penalty, the trial court found four aggravating circumstances: The crime was committed while defendant was under sentence of imprisonment; the murder was committed during the commission of a felony; the murder was especially heinous, atrocious and cruel; and the murder was cold, calculated and premeditated. On reviewing the record, we can accept the first two, but we find the last two improper.
The trial court grounded its finding that the murder was especially heinous, atrocious and cruel on the victim's having been shot twice in the back, indicating a lack of resistance to the robbery. Evidence establishes that one of the shots penetrated the heart, causing death within ten seconds. There was evidence disproving any possibility of prolonged and torturous captivity and no evidence whatsoever that the victim apprehended certain death more than moments before he died. While the murder was, of course, a cruel and unjustifiable deed, there is nothing about it to "set the crime apart from the norm of capital felonies." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). See also Armstrong v. State, 399 So.2d 953 (Fla. 1981) (bodies were found fifteen minutes after shots were heard; death was instantaneous and not especially heinous, atrocious and cruel); Menendez v. State, 368 So.2d 1278 (Fla. 1979) (in spite of submissive posture of victim who died after being shot twice, murder was not especially heinous, atrocious and cruel). This aggravating factor cannot be sustained.
The trial court based the finding that the murder was cold, calculated and premeditated on the evidence that "the killing was the consumation of a robbery wherein there was no evidence of resistance by the victim. The Defendant ... [has shown] absolutely no feeling or remorse for the act." This aggravating circumstance applies only to crimes which exhibit a heightened premeditation, greater than that required to establish premeditated murder. Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). This heightened premeditation must also be proved beyond a reasonable doubt. Williams v. State, 386 So.2d 538 (Fla. 1980). The record arguably bears evidence that the robbery was premeditated in a cold and calculated manner, but that premeditation cannot automatically be transferred to the murder itself. The physical evidence was not determinative of the issue beyond a reasonable doubt, and there was no other evidence as to this factor. This aggravating factor cannot be sustained. We would also commend to the trial court's attention this Court's recent decision, Pope v. State, 441 So.2d 1073 (Fla. 1983), in which all consideration of lack of remorse is held to be improper in making findings of fact in support of aggravating factors.
The finding that appellant was under sentence of imprisonment when the murder was committed was based on certified copies of records from North Carolina showing that a David Kidd Gorham, a black male with the same date of birth as the defendant, had been sentenced to prison and had escaped. The records were introduced by a Florida assistant state attorney who had no first-hand knowledge of *560 the identity of the man sentenced in North Carolina and were accompanied by neither photographs nor fingerprints. The defendant contends that the state has not met its burden of proving each aggravating factor beyond a reasonable doubt. We recognize that the introduction into evidence of photographs or fingerprints of the man convicted in North Carolina would have foreclosed any doubt whatsoever on this issue. Nonetheless, in this instance at least, the identical name, sex, race and date of birth of the defendant and the North Carolina convict were sufficient to meet the state's burden of proving beyond a reasonable doubt they were the same person. Parenthetically, we note that the defendant was provided a copy of the pre-sentence investigation the trial court considered before sentencing the defendant. The North Carolina conviction was included in the report, and the defendant neither voiced any objection to its being considered against him nor took issue with it.
The trial court properly found that the murder was committed during commission of a felony and found no mitigating factors. In spite of the jury's recommendation of life, the trial court imposed the death penalty. Faced with two proper aggravating factors weighed against the absence of any mitigating circumstances, we agree that the facts suggesting a sentence of death are so clear and convincing that virtually no reasonable person could differ. Tedder v. State, 322 So.2d 908 (Fla. 1975). The jury override was proper and a review of similar cases indicates that the death penalty is appropriate to the crime committed.
For the foregoing reasons, appellant's convictions on both counts and the sentence of death are affirmed.
It is so ordered.
BOYD, C.J., and ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the conviction, but concurs in result only in the sentence.
OVERTON, J., concurs in the conviction, but dissents from the sentence.