526 So.2d 903 (1988)
Morris BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 68690.
Supreme Court of Florida.
May 12, 1988.
Rehearing Denied July 14, 1988.
*904 Michael E. Allen, Public Defender and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Richard E. Doran, Asst. Atty. Gen., Tallahassee, for appellee.
BARKETT, Justice.
Morris Lavon Brown appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm appellant's conviction but reverse his sentence and remand for imposition of a life sentence in accordance with the jury's recommendation.
The facts of the murder were recounted at trial by nineteen-year-old Edward Cotton, the co-defendant.[1] In the early evening hours of April 4, 1985, Cotton and eighteen-year-old Brown donned stocking masks and held up a convenience store. The robbery was interrupted by a customer who fled under fire. After driving away from the scene of the robbery, Cotton and Brown were intercepted by Officer Bevis of the Jackson County Sheriff's office. The officer directed Cotton to exit the car and produce his driver's license. During this process Bevis looked inside the car and saw a stocking mask, a credit card belonging to the store clerk who had just been robbed, and a gun. Bevis ordered appellant out of the car at gunpoint and told him he "would blow his head off" if he ran. Bevis then directed both men to place their hands on the patrol car while he radioed for assistance. At this point, appellant suggested to Cotton that they jump Bevis, but Cotton refused. As Bevis tried to handcuff Cotton, appellant jumped Bevis and the two men struggled in the road. Cotton testified that he tried to break up the struggle but gave up and moved to the middle of the road. Cotton then heard a shot, heard Bevis say "please don't shoot," and heard two more shots. Cotton and appellant then fled in their automobile. Another police *905 car soon gave chase, forcing Cotton and Brown to abandon their vehicle and run into the woods. After a few moments, Cotton returned to the road and surrendered. Appellant was captured the following morning.
The medical examiner testified that Bevis had been shot once in the arm and twice in the head and that either shot to the head would have caused instant death.
At the penalty phase, the state presented evidence relating to certain of the enumerated aggravating factors, and the defense, in mitigation, presented evidence of mental handicap, serious emotional disturbance in general and at the time of the crime, and an impoverished family background. The jury returned a recommendation of life imprisonment but the court sentenced Brown to death, finding four aggravating factors (previous conviction of violent felony,[2] murder committed during robbery,[3] murder to avoid arrest or hinder law enforcement,[4] murder especially heinous, atrocious and cruel[5]) and one mitigating factor (age[6]).
Appellant asserts three grounds for reversal of his conviction. The first is the trial judge's inexperience. The trial judge in this case had retired after serving as a judge of the Criminal Court of Record for Orange County from 1963 to 1972. In 1981, he was appointed by the Governor to serve for one year as a county judge to fill a vacancy created by death.[7] As a retired judge, he periodically has been appointed to serve on the bench and was assigned to preside over this trial by special order of this Court.[8] Appellant does not challenge the trial court's jurisdiction, but claims that the trial judge was unqualified to sentence in this capital case because he did not have enough experience in sentencing persons convicted of serious felonies, or that the experience he did have was too remote in time. In support of his position, appellant relies on certain language in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), and Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), relating to the trial judge's role vis-a-vis that of the jury in Florida's death sentencing scheme. We find nothing in these decisions, upholding the constitutionality of Florida's death penalty statute, or elsewhere, suggesting that a judge must acquire some threshold level of experience before he or she is qualified to preside in a capital case. We therefore reject this argument as meritless.
In his second point, appellant asserts that the change of venue from Jackson *906 County, where the offense occurred, to Bay County violated his sixth amendment right to a jury drawn from a representative cross-section of his community. In a novel challenge, appellant does not complain about the jury selection process or the voter registration list from which prospective jurors are drawn, see, e.g., People v. Harris, 36 Cal.3d 36, 201 Cal. Rptr. 782, 679 P.2d 433, cert. denied, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984), but contends rather that moving the case to Bay County resulted in a systematic exclusion of blacks because only eight percent of those eligible for jury duty in Bay County were black compared to twenty-two percent in Jackson County. This argument must be rejected on the facts of this case. The record clearly shows that appellant's jury was composed of nine whites and three blacks. Since the percentage of blacks on the actual jury (twenty-five percent) exceeded the percentage of blacks in the community (twenty-two percent), appellant cannot claim to have been denied the opportunity to be tried by a representative cross-section of his community.
Third, appellant argues that this Court should grant a new trial because of the insufficiency of the evidence combined with other errors.[9] The record clearly reflects sufficient evidence to support appellant's conviction. Cotton's testimony was substantially corroborated by physical evidence and expert witnesses. We are not persuaded by appellant's argument that the evidence was insufficient because Cotton's testimony was suspect due to his interest in minimizing his own involvement in the crime and because he gave a somewhat different version of the shooting when arrested;[10] these were matters for the jury to consider and resolve.
As to sentence, appellant challenges the court's finding that the murder was heinous, atrocious and cruel, and its rejection of the jury recommendation of life imprisonment. We find merit to both points.
In Dixon, 283 So.2d at 9, this Court stated:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim. [Emphasis added.]
It appears from the sentencing order that the trial judge based his finding that the murder was especially heinous, atrocious and cruel to a large degree upon the victim's status as a law enforcement officer.[11] The mere fact that the victim is *907 a police officer is, as a matter of law, insufficient to establish this aggravating circumstance. See Fleming v. State, 374 So.2d 954, 958 (Fla. 1979) (murder of police officer shot during struggle for weapon no more shocking than majority of murder cases); Cooper v. State, 336 So.2d 1133 (Fla. 1976) (murder of police officer by shooting twice in the head not especially atrocious), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). Nor is an instantaneous or near-instantaneous death by gunfire ordinarily a heinous killing. Odom v. State, 403 So.2d 936, 942 (Fla. 1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Lewis v. State, 398 So.2d 432, 434, 438 (Fla. 1981); Riley v. State, 366 So.2d 19, 21 (Fla. 1978).
In this case, the evidence indicated that the fatal shots came almost immediately after the initial shot to the arm. The murder was not accompanied by additional acts setting it apart from the norm of capital felonies and the evidence disproved that it was committed so as to cause the victim unnecessary and prolonged suffering. See Gorham v. State, 454 So.2d 556, 559 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985); Lewis v. State, 377 So.2d 640 (Fla. 1979). We therefore conclude that this crime was not "especially heinous, atrocious or cruel" as defined in Dixon.
Lastly, we find the trial judge erroneously overrode the jury's life recommendation. For the trial judge to overrule the recommendation of the jury, the facts justifying the death sentence must be so clear and convincing that the jury can be said to have acted unreasonably. Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). See also Ferry v. State, 507 So.2d 1373 (Fla. 1987); Washington v. State, 432 So.2d 44 (Fla. 1983); Norris v. State, 429 So.2d 688 (Fla. 1983); Brown v. State, 367 So.2d 616 (Fla. 1979); Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
Here, there was ample evidence mitigating against death to support the jury's decision. The jury's recommendation could have been based not only on appellant's youth but also on his mental and emotional handicap and impoverished background.
*908 According to expert testimony, appellant had an IQ of 70-75, classified as borderline defective or just above the level for mild mental retardation. At age ten, he had been placed in a school for the emotionally handicapped. Although chronologically eighteen, he had the emotional maturity of a preschool child. The psychologist concluded that both statutory mental mitigating factors applied, i.e., that the murder was an impulsive act committed while appellant was under the influence of serious emotional disturbance[12] and while his capacity to appreciate the criminality of his conduct or conform his conduct to the law was substantially impaired.[13] Additionally, there was testimony that appellant was not a vicious or predatory-type criminal and rehabilitation thus was likely. The potential for rehabilitation constitutes a valid mitigating factor. Francis v. Dugger, 514 So.2d 1097, 1098 (Fla. 1987); Valle v. State, 502 So.2d 1225, 1226 (Fla. 1987).
We point out that the trial judge was incorrect in concluding that appellant's "disadvantaged childhood, his abusive parents, and his lack of education and training, do not establish mitigation in the eyes of this court or in the eyes of the law." Although in some cases family background and personal history may be given little weight, it is well-established that such evidence must be considered. Mitigating evidence is not limited to the facts surrounding the crime but can be anything in the life of a defendant which might militate against the appropriateness of the death penalty for that defendant. See Hitchcock v. Dugger, ___ U.S. ___, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). This type of mitigating evidence is particularly significant in a case such as this where the defendant at the time of the crime was a borderline defective eighteen-year-old functioning emotionally as a disturbed child. See Eddings, 455 U.S. at 116, 102 S.Ct. at 877 (background and mental and emotional development of sixteen-year-old defendant is relevant mitigating factor of great weight); Amazon v. State, 487 So.2d 8, 13 (Fla.) (age could mitigate crime committed by nineteen-year-old with emotional maturity of thirteen-year-old and some emotional development at level of one-year-old), cert. denied, ___ U.S. ___, 107 S.Ct. 314, 93 L.Ed.2d 288 (1986).
The jury override was thus improper. Accordingly, we vacate appellant's death sentence and remand for imposition of life imprisonment without possibility of parole for twenty-five years.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Cotton already had been convicted of first-degree murder in a separate trial.
[2] § 921.141(5)(b), Fla. Stat. (1987).
[3] § 921.141(5)(d), Fla. Stat. (1987).
[4] § 921.141(5)(g), Fla. Stat. (1987).
[5] § 921.141(5)(h), Fla. Stat. (1987).
[6] § 921.141(6)(g), Fla. Stat. (1987).
[7] Article V, section 11(b), Florida Constitution, authorizes the governor to fill vacancies on a county court.
[8] Article V, section 2(b), Florida Constitution, authorizes the chief justice of the supreme court to "assign justices or judges, including consenting retired justices or judges, to temporary duty in any court for which the judge is qualified." A county judge who is qualified to serve as a circuit judge may be assigned as a temporary circuit judge to perform any judicial service a circuit judge can perform. White v. State, 446 So.2d 1031, 1034 (Fla. 1984). Article V, section 8, Florida Constitution, establishes the general qualifications for judicial service:

Eligibility.  No person shall be eligible for office of justice or judge of any court unless he is an elector of the state and resides in the territorial jurisdiction of his court. No justice or judge shall serve after attaining the age of seventy years except upon temporary assignment or to complete a term, one-half of which he has served. No person is eligible for the office of justice of the supreme court or judge of a district court of appeal unless he is, and has been for the preceding ten years, a member of the bar of Florida. No person is eligible for the office of circuit judge unless he is, and has been for the preceding five years, a member of the bar of Florida. Unless otherwise provided by general law, no person is eligible for the office of county court judge unless he is, and has been for the preceding five years, a member of the bar of Florida. Unless otherwise provided by general law, a person shall be eligible for election or appointment to the office of county court judge in a county having a population of 40,000 or less if he is a member in good standing of the bar of Florida.
[9] Appellant argues that the weakness of the state's case should be considered in light of the following additional claims of error: (1) giving an instruction on flight; (2) precluding defense counsel from arguing that Cotton's testimony was influenced by the fact that he had not yet been sentenced and was hoping to avoid the death penalty; (3) admitting a picture of the victim's arm wound. We reject all of these claims as meritless. The flight instruction was proper. Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Williams v. State, 268 So.2d 566 (Fla. 3d DCA 1972). Moreover, the trial court did not preclude argument by defense counsel regarding Cotton's beliefs as to the effect of his testimony, but merely precluded an argument implying that the state had made him promises, Finally, the trial court did not abuse its discretion in admitting the photograph.
[10] While being booked at the county jail, Cotton told a correctional officer that he ran to his car when the fight began and remained there the entire time appellant and Bevis were fighting.
[11] The trial judge's findings of fact as to this aggravating factor are as follows:

The killing of James Bevis was a direct and premeditated shooting at the hand of Morris Lavon Brown. James Arthur Bevis, in the performance of his lawful duties on April 4, 1985, attempted to arrest Edward Cotton and Morris Lavon Brown. During the course of this arrest, Morris Lavon Brown, assaulted the police officer, fought him to the ground. During the course of the struggle, the Defendant Morris Brown shot James Arthur Bevis in the arm with his own service revolver. According to the testimony of the medical examiner, this shot left the victim virtually paralyzed on that side of his body. The arm that was shot was useless in defending himself. Even though the testimony of a witness who claims to have helped the Defendant commit a crime must be taken with great caution, this Court finds that the testimony does convince the Court beyond a reasonable doubt of the Defendant's guilt and of the Defendant Brown's active participation in the killing of James Bevis. From this testimony, it is clear that Morris Lavon Brown, after having shot James Bevis in the arm and knocking him to the ground, stood over him and pointed his service revolver at him. This Court can barely conceive the agony that James Bevis must have been going through at this point. Laying on his back, holding his injured arm, and looking up to see the six foot, two hundred pound, Morris Lavon Brown, pointing a .357 magnum revolver in his face. Bevis, a trained law enforcement officer, surely was trying to protect himself, but he must also have been thinking of how he could prevent someone else who might come into contact with Morris that night from being hurt. As he looked up into the barrel of his own gun, he pleaded for his life, "Please don't shoot me, please don't shoot me." Just think of the indignity of these events. A sworn peace officer of Jackson County, Florida, in full uniform, wearing a bulletproof vest, has been shot down by a two-time loser and robbery suspect. A man who is sworn to uphold the law is reduced to begging for his very life. The pain in his arm was excruciating, according to the medical testimony. And what did Defendant Brown do at this point? He had the arresting officer down where he could not harm Brown any more. All Brown needed to do was to flee the scene and he could have gotten away with his crime. But he didn't. While the victim was begging for his life, the Defendant Brown shot him twice in the head. Once from the side near the ear, and once directly in the face. Both bullets entered the brain and remained there. Either bullet could have been the fatal shot, according to the medical examiner. This Court can think of no greater atrocity that could be placed upon a law enforcement officer. This Court can think of nothing more heinous, atrocious, or cruel, than to shoot an unarmed, wounded law enforcement officer in the head with his own gun, especially since he was wearing a bulletproof vest, and the only place to inflict a fatal wound would have been the head. The suffering of James Bevis after the first shot to his arm and prior to his death can barely be comprehended by those of us among the living. The pain, torture, and humiliation for a law enforcement officer of his credentials would have been immeasurable. The Court finds that this capital crime was especially heinous, atrocious, or cruel. [Emphasis added.]
[12] See § 921.141(6)(b), Fla. Stat. (1987).
[13] See § 921.141(6)(f), Fla. Stat. (1987).