603 So.2d 490 (1992)
Chester Levon MAXWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 77138.
Supreme Court of Florida.
June 25, 1992.
Rehearing Denied September 11, 1992.
Andrew A. Ostrow of Foley & Lardner, and Steven H. Malone, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Chester Levon Maxwell appeals from a denial of his motion under Rule of Criminal Procedure 3.850 to vacate the death sentence imposed upon him. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
The facts surrounding the crimes for which Maxwell was convicted are recited in the case on direct appeal. Maxwell v. State, 443 So.2d 967 (Fla. 1983). The present matter arises from a timely habeas petition Maxwell originally filed with this Court after the fundamental change in Florida death-penalty law mandated by Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We remanded to the trial court, and the petition was denied without hearing. This appeal ensued.
Maxwell contends that he is entitled to a new sentencing hearing under the standards announced in Hitchcock and its progeny. As we earlier have noted, the United States Supreme Court in Hitchcock reversed the "mere presentation" standard that this Court had followed previously. This superseded standard had required only that a defendant be permitted to *491 present both statutory[1] and nonstatutory mitigating[2] evidence to the court and the jury; and we consistently had found no error if this nonstatutory mitigating evidence was not actually weighed in the sentencing process. Downs v. Dugger, 514 So.2d 1069 (Fla. 1987).
After Hitchcock reversed us on this point of law, we held that an error has occurred in sentencing if the judge believes or the jury is led to believe that nonstatutory mitigating evidence may not be considered. Id. Elaborating on this basic holding, we subsequently have held that every mitigating factor apparent in the entire record before the court at sentencing, both statutory and nonstatutory, must be considered and weighed in the sentencing process. Cheshire v. State, 568 So.2d 908, 912 (Fla. 1990) (citing Rogers v. State, 511 So.2d 526, 534 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988)). Moreover,
when a reasonable quantum of competent, uncontroverted evidence of a mitigating circumstance is presented, the trial court must find that the mitigating circumstance has been proved.
Nibert v. State, 574 So.2d 1059, 1062 (Fla. 1990) (emphasis added). The rejection of a mitigating factor cannot be sustained unless supported by competent substantial evidence refuting the existence of the factor. Id. (citing Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Cook v. State, 542 So.2d 964 (Fla. 1989); Pardo v. State, 563 So.2d 77 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991)).
In the present case, it is clear that the trial court below committed a Hitchcock error both in its instructions to the penalty phase jury and in its own written findings. The State concedes as much in its brief, and we therefore need not labor the matter further. The only remaining issue is whether the error was harmless. See Delap v. Dugger, 513 So.2d 659 (Fla. 1987). This requires us to review the available mitigating evidence.
During the penalty phase, a neighbor of Maxwell named Loretta Pembleton testified that he had helped her repeatedly since the time she was eleven years of age. She stated that Maxwell had served as her surrogate "big brother," had advised her in a meaningful and constructive way about problems she faced growing up in a poor neighborhood, and had showed her the "right way" to do things. Based on her experiences with Maxwell, Pembleton concluded that he had "a lot to offer society." The State acquiesced in this evidence and did not exercise its right to cross examine her.
Maxwell also called Willie B. Johnson, another of his neighbors. Johnson testified that Maxwell frequently helped him with his six children and yard work. According to this witness, Maxwell was good with the children and treated them very nicely. Johnson expressed his belief that Maxwell still could contribute to society and should be given a chance to be rehabilitated. Again, the State did not rebut or cross examine this witness.
Another witness, Frances Lenora Mincey, testified that Maxwell had lived across the street from her. She said he had been a good boy and neighbor, and that he would volunteer to help her with work around her house. Mincey further testified that Maxwell's grandmother had been forced to raise the boy and that the grandmother was an old lady who could not give him the care he really needed. Nevertheless, *492 said Mincey, Maxwell was a good and considerate boy who had lived in rough conditions as a child.
Maxwell's father, Joseph Maxwell, also was called to the stand. The father testified that Maxwell's childhood had been full of disruptions. He had been reared in his earlier years by a grandmother, but had to come live with his father when the grandmother became too ill to care for him. According to the father, Maxwell always had helped him with housework and chores around the father's rental property.[3] Maxwell was good with children and served as a "big brother" to many youngsters in the neighborhood. The father also stated that Maxwell still had good to offer society. Again, the State did not controvert or question the father's testimony.
A presentence investigation report available to the trial court at sentencing further elaborated on the factual matters disclosed by the witnesses. According to this report, Maxwell was an illegitimate child who never knew his real mother and whose father had cared very little for him in his early years. A grandmother had reared him but became bedridden from illness, at which time Maxwell had to go live with his father. The report states that Maxwell grew up in poverty, without proper guidance, in an atmosphere of neglect. His home life was unstable throughout his formative years.
One further matter deserves mention. The evidence at trial disclosed that Maxwell actually shot the victim during the course of a robbery, but he was assisted by a knife-wielding accomplice named Dale Griffin. Griffin and Maxwell were tried together, but Griffin received only a life sentence. Maxwell, 443 So.2d at 969 n.[*] (citing Griffin v. State, 412 So.2d 501 (Fla. 4th DCA 1982)).
A portion of the State's brief consists of an effort to discredit the evidence outlined above. While we acknowledge that this evidence leaves questions unanswered, we nevertheless must construe it in favor of any reasonable theory advanced by Maxwell to the extent the evidence was uncontroverted at trial. As we stated in Nibert, the court must find and weigh any mitigating circumstance established by "a reasonable quantum of competent, uncontroverted evidence." Nibert, 574 So.2d at 1062.
The uncontroverted evidence supports at least the following reasonable mitigating factors: (1) that Maxwell had been good earlier in life and was the product of parental neglect, Hegwood v. State, 575 So.2d 170, 173 (Fla. 1991); (2) that he had a disadvantaged youth, Brown v. State, 526 So.2d 903 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988); (3) that he has a potential for rehabilitation and might be productive within a prison setting, as supported by positive personality traits and good deeds he has done in his life, Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); Cooper v. Dugger, 526 So.2d 900 (Fla. 1988); Holsworth v. State, 522 So.2d 348 (Fla. 1988); McCampbell v. State, 421 So.2d 1072 (Fla. 1982); (4) that Maxwell was a hard worker who helped members of his family and others, Thompson v. State, 456 So.2d 444 (Fla. 1984); and (5) that family and friends feel he is a good prospect for rehabilitation, and that he had been friendly and helpful to others and good with children. Lamb v. State, 532 So.2d 1051 (Fla. 1988).
All of these clearly are valid nonstatutory mitigating factors upon which a properly instructed jury reasonably could have relied. We also note that the case for aggravation is less severe, and the case for mitigation greater, here than in O'Callaghan v. State, 542 So.2d 1324 (Fla. 1989) ("O'Callaghan I"). The facts of O'Callaghan were similar in that Mr. O'Callaghan was the actual triggerman who shot the victim, but was assisted by other perpetrators who did not receive a death sentence. The penalty phase jury had recommended death for O'Callaghan, and the trial court had concurred. On direct appeal in O'Callaghan, this Court sustained four valid aggravating factors: (1) murder committed *493 during the course of a kidnapping; (2) heinous, atrocious, or cruel; (3) prior conviction of a violent robbery; and (4) cold, calculated premeditation. O'Callaghan v. State, 429 So.2d 691, 696-97 (Fla. 1983) ("O'Callaghan II").
On collateral challenge, this Court reconsidered O'Callaghan in light of an acknowledged Hitchcock error. We let stand all four aggravating factors as stated in the direct appeal, but concluded that a single nonstatutory mitigating factor had been excluded improperly from the jury's consideration  the fact that lesser penalties had been imposed on the coperpetrators. Despite the existence of four aggravating factors  including two of the most serious[4]  we concluded that the error was not harmless. O'Callaghan I, 542 So.2d at 1326.
By comparison, the present case involves only two aggravating factors. These do not include the more serious factors of heinous, atrocious, or cruel, or cold, calculated premeditation. The latter two we expressly rejected on direct appeal based on the facts of Maxwell's crime. Maxwell, 443 So.2d at 971. Simultaneously, we have found that the record supports at least five valid nonstatutory mitigating factors that this Court previously has recognized and applied in other cases. If the error in O'Callaghan was harmful, it surely must be so in a case such as this, where the mitigating evidence is weightier and the aggravating evidence less severe.
Accordingly, Maxwell's sentence of death is vacated, and this cause is remanded to the trial court for a new penalty phase before a jury in full compliance with this opinion and all other applicable law. The other issue raised by Maxwell is rendered moot by our opinion, although we caution that a court always must avoid even the appearance of an ex parte communication.[5]
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, KOGAN and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion.
GRIMES, Justice, dissenting.
Because Maxwell was not constrained in his presentation of nonstatutory mitigating evidence, the only issue before us is whether the giving of the jury instruction which could have limited the jury's consideration of such evidence was harmless error. In order to evaluate this issue, it is first necessary to consider the circumstances of the crime itself, and these are described in our original opinion:
The appellant, Chester Maxwell, and his co-defendant, Dale Griffin, were found guilty by a jury and convicted of the murder of Donald Klein. The evidence showed that Mr. Klein was playing golf with three friends at the Palmaire Country Club in Pompano Beach, Broward County, when Maxwell and Griffin approached. Griffin grabbed one golfer and held a knife to his throat while appellant pulled out a revolver. The assailants robbed three of the men of their money, the fourth golfer having nothing of value on his person. From Donald Klein appellant took a gold bracelet, a gold chain and some gold pendants. Appellant also demanded Mr. Klein's gold ring. When Klein protested that his wife had given him the ring, appellant shot him in the chest. He died within minutes. Both the heart and the lungs were severely damaged by the bullet, which was a .22 caliber rifle bullet cut off at the nose so it would fit into the pistol's chamber.
Maxwell v. State, 443 So.2d 967, 968 (Fla. 1983).
In that opinion, we determined that there were two valid statutory aggravating circumstances, i.e., prior violent felony and murder committed during the course of a robbery. There were no statutory mitigating *494 circumstances. There was no mental mitigating evidence. The essence of the nonstatutory mitigating evidence now relied upon by Maxwell is that he was raised in impoverished circumstances first by his grandmother and then his father and that he was helpful to some of his neighbors. The fact that his accomplice in the crime received only a life sentence while Maxwell received a sentence of death cannot be deemed mitigating because it was Maxwell who cold-bloodedly shot the victim.
The weakness of this nonstatutory evidence was highlighted when, in rejecting the claim of ineffectiveness of counsel for failing to present more evidence of Maxwell's background, this Court said:
Moreover, it is highly doubtful that more complete knowledge of appellant's childhood circumstances, mental and emotional problems, school and prison records, etc., would have influenced the jury to recommend or the judge to impose a sentence of life imprisonment rather than death.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.), cert. denied, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986).
The Hitchcock error in this case was clearly harmless beyond a reasonable doubt. I would affirm the order denying Maxwell's motion for postconviction relief.
NOTES
[1] "Statutory mitigating evidence" is any evidence tending to prove the existence of those factors described in section 921.141(6), Florida Statutes (1991).
[2] "Nonstatutory mitigating evidence" is evidence tending to prove the existence of any factor that "in fairness or in the totality of the defendant's life or character, may be considered as extenuating or reducing the degree of moral culpability for the crime committed" or "anything in the life of the defendant which might militate against the appropriateness of the death penalty." Waters Dictionary of Florida Law 432-33 (1991) (citing Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988); Brown v. State, 526 So.2d 903 (Fla.), cert. denied, 488 U.S. 944, 109 S.Ct. 371, 102 L.Ed.2d 361 (1988)).
[3] This testimony confirmed earlier statements Maxwell himself made regarding the help he rendered his father.
[4] By any standards, the factors of heinous, atrocious, or cruel, and cold, calculated premeditation are of the most serious order.
[5] Maxwell alleged that the trial court communicated with the prosecutor during preparation of its order, without affording Maxwell's counsel an opportunity to be heard.