644 So.2d 987 (1994)
Edward CASTRO, Appellant,
v.
STATE of Florida, Appellee.
No. 81731.
Supreme Court of Florida.
September 8, 1994.
Rehearing Denied November 16, 1994.
*988 James B. Gibson, Public Defender and George D.E. Burden, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Dan Haun, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Edward Castro appeals the imposition of the death penalty on resentencing. We have jurisdiction based on article V, section 3(b)(1) of the Florida Constitution.
In 1988 Castro was found guilty of first-degree murder and sentenced to death for strangling and stabbing Austin Scott. On appeal, this Court upheld Castro's conviction, but remanded for a new penalty hearing because of faulty jury instructions and the erroneous presentation of irrelevant, presumptively prejudicial evidence of collateral crimes. Castro v. State, 547 So.2d 111 (Fla. 1989). Castro was sentenced to death in the new penalty phase, but this Court again remanded for a new penalty hearing because the trial court erred in refusing to disqualify the Fifth Circuit State Attorney's Office from prosecuting the case. Castro v. State, 597 So.2d 259 (Fla. 1992).
At the new penalty phase, held in 1993, the jury voted eight to four to recommend death. In sentencing Castro to death, the trial judge found four aggravating factors: (1) Castro was previously convicted of another capital felony and of a crime involving the use or threat of violence toward another person; (2) Castro committed the murder during the commission of a robbery; (3) the murder was heinous, atrocious, or cruel; and (4) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial judge found no statutory mitigating factors, but found two nonstatutory mitigators (Castro suffered physical and sexual abuse as a child and Castro is an alcoholic). The trial court determined, however, that the aggravating factors overwhelmingly outweighed the mitigating evidence.
We affirm the death sentence imposed on Castro.
*989 The relevant facts of this case are that Castro came to Ocala and drank heavily for several days. He decided to leave town and concluded that he needed to steal a car to do so. When Castro saw Scott coming out of an apartment, he introduced himself and the two drank together in the apartment. Castro left on the pretext of getting ten dollars. Instead, he retrieved a steak knife from a neighboring apartment. When Castro returned, he saw Scott leaving the apartment but convinced him to return. The two drank a beer, then Scott again decided to leave. Castro grabbed Scott by the throat and squeezed so hard that blood came out of Scott's mouth. Scott struggled and scratched, but Castro told him, "Hey, man, you've lost. Dig it?" Castro got the steak knife and stabbed Scott between five and fifteen times. The medical examiner testified that she did not know in what sequence the chest wounds were inflicted or whether Scott lost consciousness after the strangulation.
After killing Scott, Castro took Scott's car and drove to Lake City. When Castro stopped in Columbia County, a sheriff's deputy noticed that his speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol. The deputy arrested Castro for disorderly intoxication after he became hostile toward officers. After his arrest, Castro made several statements about the murder.
Castro raises eleven issues on this direct appeal.[1]
We reject Castro's argument that the trial court impermissibly excused a juror for cause over defense objection. During voir dire, prospective juror Terry Strayer said his religious beliefs would prevent him from imposing the death penalty. Although he said in response to a defense question that he could set aside those beliefs and follow the law as given by the trial court, he also said he felt bound to follow a "higher law." He ultimately said he was not sure he could follow the trial court's instructions on this matter.
The United States Supreme Court has held that the standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is
whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." ... [T]his standard likewise does not require that a juror's bias be proved with unmistakable clarity.
Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (footnote omitted) (quoting Adams v. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980)). The trial judge has the duty to decide if a challenge for cause is proper, and this Court must give deference to the judge's determination of a prospective juror's qualifications. Witt, 469 U.S. at 426, 105 S.Ct. at 853.
The record here is not clear that Strayer was willing to consider all of the penalties provided by state law. See Witherspoon v. Illinois, 391 U.S. 510, 522 n. 21, 88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776 (1968). Indeed, the record indicates that Strayer could not set aside his beliefs, so the trial judge did not abuse his discretion in granting the motion to excuse him for cause. Accordingly, this issue has no merit.
*990 Castro also argues that the trial court should have struck eight jurors for cause because they were exposed to prejudicial pretrial publicity, they would automatically presume that death is the appropriate penalty, and they expressed doubts about their ability to be fair and impartial because they supported the death penalty. Castro claims he was forced to exercise peremptory challenges to remove jurors who should have been excused for cause and the trial judge refused to grant additional peremptory challenges. As a result, two jurors who read a prejudicial newspaper article served on the jury.
The local newspaper published an article the day before jury selection that said Castro would be resentenced.[2] The trial judge conducted an individual voir dire of each prospective juror. Five of the eight prospective jurors at issue here said they had seen the article, but all said they had not formed any opinions about the case. Only one of these prospective jurors, Gloria Bell, actually served on the jury. The record reflects that Bell knew Castro was guilty of first-degree murder and did not remember anything else about the case. She did not say she knew Castro had twice been sentenced to death.
Because the defense had no more peremptory challenges, it could not remove a ninth prospective juror, Olive Milam, from the jury. Milam read part of the article and recalled that the case was being transferred from another county. Castro argues that the presence of Bell and Milam on the jury is significant, particularly because the panel recommended death by a vote of eight to four.
The mere fact that jurors were exposed to pretrial publicity is not enough to raise the presumption of unfairness. Bundy v. State, 471 So.2d 9, 19 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986). "It is sufficient if the juror can lay aside his opinion or impression and render a verdict based on the evidence presented in court." Id. at 20. Here, the record indicates that the prospective jurors did not form any opinions about the case. In fact, after questioning from the defense, State, and trial judge, there is no indication that the prospective jurors even knew Castro had previously been sentenced to death. Thus, we find no error.
Some of the eight prospective jurors at issue here also expressed strong views in favor of the death penalty, but were not excused for cause. Jurors must be excused for cause if their beliefs prevent them from applying the law and discharging their sworn duty. Randolph v. State, 562 So.2d 331, 335 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 538, 112 L.Ed.2d 548 (1990). This is subject to an abuse of discretion review because the trial court has the opportunity to observe and evaluate the prospective juror's demeanor and credibility. Lambrix v. State, 494 So.2d 1143, 1146 (Fla. 1986).
We find no error in the trial court's refusal to strike the prospective jurors for cause because of their views on the death penalty. It is obvious from the record that when questioning began the jurors had not been given any explanation about their role in the case. In fact, the trial judge expressed his frustration and said an explanation would be helpful to the prospective jurors, but none was given. Not surprisingly, the prospective jurors had no grounding in the intricacies of capital sentencing. Some of these jurors came to court with the reasonable misunderstanding that the presumed sentence for first-degree murder was death. When they were advised that they were responsible for weighing aggravating and mitigating factors, they indicated they would be able to follow the law. In reviewing the record, we find no indication that the trial judge abused his discretion. Thus, we find no error on this issue.
*991 Turning to the next issue, we agree with Castro that the trial court erred in finding that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. This aggravating factor requires "a degree of premeditation exceeding that necessary to support a finding of premeditated first-degree murder." Hardwick v. State, 461 So.2d 79, 81 (Fla. 1984), cert. denied, 471 U.S. 1120, 105 S.Ct. 2369, 86 L.Ed.2d 267 (1985). While the record reflects that Castro planned to rob Scott, it does not show the careful design and heightened premeditation necessary to find that the murder was committed in a cold, calculated, and premeditated manner. Although this aggravating factor does not apply, three other aggravating factors support the death penalty[3] and there is a weak case for mitigation. Thus, any error is harmless beyond a reasonable doubt, State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986), and the trial court did not err in instructing the jury on this factor.
We find no merit to the remaining issues.[4] Accordingly, we affirm the imposition of the death sentence in Castro's case.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
GRIMES, C.J., concurs with an opinion.
GRIMES, Chief Justice, concurring.
I concur in affirming the death penalty, but I also believe the evidence was sufficient to support a finding that the murder was cold, calculated, and premeditated. According to Castro's statement to the police, he decided he needed to steal a car. He then introduced himself to Scott, and the two began drinking together in the apartment. At this point, Castro said that he decided that he was going to "take this guy out." He left on the pretext of getting $10, but instead went to a neighboring apartment to obtain a steak knife.
When Castro returned, he saw Scott leaving the area. He waved Scott down and convinced him to return to the apartment. After another beer, Castro grabbed Scott by the throat and began to choke him until blood came out of his mouth. When Scott struggled, Castro told him, "Hey man you've lost. Dig it?" Thereupon, Castro stabbed Scott with the steak knife between five and fifteen times. He then took Scott's car and drove to Lake City.
This was not a robbery gone awry. Once Castro saw Scott, he decided to kill him. He obtained the knife and carried out his purpose. The killing was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification.
NOTES
[1] Whether (1) the trial court impermissibly excused a juror for cause over defense objection; (2) the trial court erred in refusing to strike eight jurors for cause; (3) the trial court erred in finding that the murder was committed in a cold, calculated, and premeditated manner; (4) the trial court erred in finding that the murder was especially heinous, atrocious, or cruel; (5) the jury recommendation and death sentence are invalid because they are based on an improper statutory aggravating circumstance that cannot be considered because of res judicata, law of the case, double jeopardy, and fundamental fairness; (6) the death penalty is proportionate; (7) the trial court erred in rejecting defense counsel's requested jury instruction about the consequences and appropriateness of a life sentence; (8) the trial court erred in refusing to suppress the statements Castro made while intoxicated because any waiver was not knowing, intelligent, and voluntary; (9) Castro was denied a fair trial by the unnecessary presentation of a gruesome autopsy photograph made of the victim's arm; (10) the statutory aggravating factor of an especially heinous, atrocious, or cruel murder is unconstitutionally vague; and (11) section 921.141, Florida Statutes (1987), is unconstitutional on its face and as applied.
[2] Although the article is not in the record, Castro's attorney quoted the article in his brief as follows:

Edward Castro, 42, has twice been sentenced to die in Florida's electric chair for killing Austin C. Scott during a robbery in '87, but both sentences were overturned on appeal, though his first-degree murder conviction still stands. Jury selection for the penalty phase begins at 8:30.
A box highlighted in the article said, "Edward Castro, 42, has twice been sentenced to die in Florida's electric chair."
[3] We reject Castro's contention that the trial court erred in finding the aggravating circumstance of an especially heinous, atrocious, or cruel murder. The evidence shows that Scott struggled while Castro was strangling him. This Court has held that "it is permissible to infer that strangulation, when perpetrated upon a conscious victim, involves foreknowledge of death, extreme anxiety and fear, and that this method of killing is one to which the factor of heinousness is applicable." Tompkins v. State, 502 So.2d 415, 421 (Fla. 1986), cert. denied, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987). We also reject Castro's argument that the instruction for this aggravating factor is unconstitutionally vague. The instruction given was not the one found wanting in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). In addition, although defense counsel objected to the instruction, she did not provide the trial court with any alternate language.

In addition, we find no merit to Castro's argument that the trial court should not have found the aggravating circumstance that Castro had previously been convicted of a capital felony. Castro was convicted of murder after his first sentencing, but before this 1993 resentencing. A resentencing is a de novo proceeding that deals with "all issues bearing on the proper sentence which the jury recommends be imposed." Teffeteller v. State, 495 So.2d 744, 745 (Fla. 1986). Thus, it was appropriate to consider the murder conviction that occurred after his first sentencing.
Castro did not challenge the fourth aggravating factor: that the murder was committed during a robbery.
[4] These are issues (6), (7), (8), (9), and (11).