721 So.2d 274 (1998)
Paul Anthony BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 89537.
Supreme Court of Florida.
October 1, 1998.
Rehearing Denied November 30, 1998.
*275 J. Peyton Quarles, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, and Judy Taylor Rush, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Paul Anthony Brown ("Brown"). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm Brown's conviction and sentence of death.

MATERIAL FACTS[1]
On November 6, 1992, Roger Hensley ("Hensley") was found dead on the bedroom floor of an apartment in Ormond Beach, Florida. He had been stabbed multiple times and his throat had been slashed. The police found two steak knives on the floor in the living room, one of which was covered in blood. Investigators documented blood spatter in several areas of the victim's bedroom and bathroom, as well as fingerprints and bloody shoe prints inside the apartment. Investigators also discovered several empty beer bottles and a bag of a substance presumed to be marijuana. Missing were the victim's white Nissan pick-up truck and keys thereto.
In October of 1992, Brown traveled from Tennessee to Daytona Beach where he met Scott Jason McGuire ("McGuire"). McGuire moved into Brown's motel room and the two spent the next two weeks consuming alcoholic beverages and smoking crack cocaine. At some point Brown decided to return to Tennessee. According to McGuire, Brown offered him $1000 to drive Brown to Tennessee but McGuire's vehicle did not work.
Thereafter, on November 5, Brown and McGuire approached Roger Hensley outside of a bar and, with Hensley driving, accompanied him to his apartment. McGuire testified *276 that during the drive, Brown held a gun behind Hensley's seat. McGuire also claimed that during before entering Hensley's apartment, Brown whispered, "How would you like to do it?," to which McGuire made no response. Inside, the three men each drank a bottle of beer, shared half of a marijuana cigarette, and talked about various things, including employment possibilities. Hensley invited Brown and McGuire to spend the night. However, before retiring to his bedroom, Hensley dropped a few dollars on the table and stated, "I don't know what you guys' game is. If you've come here to rob me, this is all the money I have. You can take it." McGuire assured Hensley that they were not there to rob him and Hensley went to bed.
After Hensley left the room, Brown told McGuire he was going to shoot Hensley and steal his truck. McGuire objected to the use of the gun because of the noise. Appearing angry at McGuire's response, Brown walked to the kitchen and got two steak knives, handing one to McGuire. McGuire threw the knife to the ground and denounced any intention of taking part in murder. Brown said he would take care of it himself and, in a symbolic gesture, dragged his hand across his throat.
Brown told McGuire to stand by the door to block Hensley's escape and he entered the bedroom where Hensley was lying on the bed. McGuire then heard what he thought were stabbing sounds and heard the victim say "no." Upon hearing something hit the floor, McGuire approached the bedroom where he noticed Hensley lying on the floor covered in blood and "making sounds" as if he was "struggling to breathe." Brown was rummaging through the victim's bedroom looking for car keys. He found the victim's wallet and removed a twenty-dollar bill. Brown, who had blood on his hands, arms, and pants, then tried to wash it off. McGuire did not have any blood on him, but attempted to wipe his fingerprints from everything in the apartment that he had touched.
Ten or fifteen minutes later, the two left the victim's apartment in Hensley's truck, stopped at their motel room to collect their belongings, and drove to Tennessee.[2] There, Brown burned his bloody pants in a stove and McGuire departed on foot a day or two later. Brown was arrested on November 8 at a farmhouse in Tennessee by agents from the Federal Bureau of Investigation (F.B.I.) on unrelated charges.[3]
While in the custody of the F.B.I., Brown stated, "I'm a murderer, not only a bank robber", and declared that he and another man named "Scott" killed "a white male" in Daytona Beach and stole his truck. Brown explained how the two met the victim and went back to the victim's "motel room", where they smoked "crack" cocaine and then stabbed and killed the victim. Brown claimed that it was McGuire's suggestion that they find someone who owned a car, steal the car, and kill the owner. He also claimed that he stabbed the victim several times in the chest and once in the back but that McGuire slit the victim's throat. Brown's statements to the FBI were admitted in evidence at trial.
Brown also testified at trial and denied any involvement in the homicide, claiming instead that McGuire killed Hensley while Brown was asleep as a result of smoking marijuana. Brown testified that he awoke to find Hensley standing over him with a bloodied knife. He claimed that McGuire had stabbed Hensley once in the back and was attempting to slit his throat. Brown also claimed that after they left the apartment, McGuire threatened to frame him for the murder if Brown told anyone about it.
The jury found Brown guilty of first-degree premeditated murder and first-degree felony murder. After a penalty phase proceeding, the jury recommended a sentence of *277 death by a vote of twelve to zero. The trial court followed the jury's recommendation and sentenced Brown to death. The trial court found four aggravating factors[4] and two non-statutory mitigating factors.[5]

APPEAL
Brown raises five issues on appeal, all of which pertain to the penalty phase of the trial.[6] Although Brown does not contest the sufficiency of the evidence for his conviction of first-degree murder, we must, nevertheless, make an independent determination that the evidence is adequate. See § 921.141(4), Fla. Stat. (1997); Fla. R.App. Pro. 9.140(h); see also Reese v. State, 694 So.2d 678, 684 (Fla.1997); Christian v. State, 550 So.2d 450, 451 (Fla.1989). Based upon our review, we find that there is competent, substantial evidence to support the verdict. That evidence has been outlined in detail above.

HAC
As his first claim, Brown argues that the evidence does not support the trial court's finding that the murder was heinous, atrocious or cruel (HAC).[7] This Court has held that "[t]he factor of heinous, atrocious, or cruel is proper only in torturous murdersthose that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another." Shere, 579 So.2d at 95; Cheshire v. State, 568 So.2d 908, 912 (Fla.1990); State v. Dixon, 283 So.2d 1, 9 (Fla.1973). Unlike the cold, calculated and premeditated aggravator, which pertains specifically to the state of mind, intent and motivation of the defendant, the HAC aggravator focuses on the means and manner in which death is inflicted and the immediate circumstances surrounding the death. Stano v. State, 460 So.2d 890, 893 (Fla.1984).
We have upheld the heinous, atrocious, or cruel aggravator in a number of cases where the victim has been repeatedly stabbed. See, e.g., Mahn v. State, 714 So.2d 391 (Fla.1998); Williamson v. State, 681 So.2d 688, 698 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1561, 137 L.Ed.2d 708 (1997); Finney v. State, 660 So.2d 674, 685 (Fla.1995); Barwick v. State, 660 So.2d 685, 696 (Fla.1995); Pittman v. State, 646 So.2d 167, 173 (Fla.1994); Campbell v. State, 571 So.2d 415 (Fla.1990); Hardwick v. State, 521 So.2d 1071, 1076 (Fla.1988); Nibert v. State, 508 So.2d 1 (Fla.1987); Johnston v. State, 497 So.2d 863, 871 (Fla.1986). In Nibert, the victim was stabbed seventeen times by the defendant who had entered the victim's home with the intent to rob him. The evidence established that of the seventeen stab *278 wounds, several were defensive wounds, and the victim remained conscious during the attack. This Court found that those facts supported a finding of HAC. 508 So.2d at 4. We find the facts in this case comparable to those in Nibert and the stabbing cases cited above.
The medical examiner testified that Hensley was stabbed a total of nine or ten times, including three in the chest, two in the back, and the remainder in the neck, abdomen, and left shoulder. In addition, the victim suffered abrasions to his face, nose, and mouth from blunt trauma, consistent with being pushed into something or hit, and had several non-fatal incise wounds on various portions of his neck.
Importantly, although the stabbing lasted only for a period of minutes, expert testimony at trial indicated that the victim was alive and conscious during the attack and obviously had moved either in an effort to stand or to evade his attacker. Both the medical examiner and an expert in blood pattern interpretation based this conclusion on the location and trail of blood spatter in the bedroom.[8] The medical examiner further based this conclusion on the existence of abrasions on the victim's shoulder, which would not have occurred had the victim been still. This evidence that the victim was alive and conscious during the attack is also consistent with McGuire's testimony that he heard Hensley say "no" and noticed that he was struggling to breathe even after the attack had ended.
Thus, it was reasonable for the trial court to conclude that Hensley was conscious at the time of the attack and was aware of what was happening as he clearly had moved in an effort to avoid his attacker. As in Nibert, we find this evidence sufficient to support the trial court's finding that the murder was heinous, atrocious, or cruel.
Brown contends that his use of alcohol and drugs on the day of the murder, as well as during the preceding two weeks, impaired his ability to form the necessary intent to torture the victim. Furthermore, he argues that Hensley was either asleep or too intoxicated to feel the attack and therefore was unaware of what was happening to him. The facts in this case, however, do not support Brown's argument.
The police discovered only three bottles of beer and a bag of marijuana at the scene of the crime. This evidence corroborates McGuire's testimony that he, Brown, and the victim each had only one beer at the victim's apartment and the three shared half of a marijuana cigarette. McGuire further stated that neither he nor Brown had anything else to drink that day. Specifically, McGuire denies smoking crack cocaine and did not notice Brown consuming any either. Further, the evidence refutes Brown's claim that Hensley was unconscious at the time of the attack. For example, McGuire refuted this by testifying that he heard the victim say "no". In addition, even if Hensley initially was asleep, expert testimony indicated that he was awake during the attack and had moved in an effort to either stand or avoid his attacker. There was no evidence that Hensley consumed any alcohol or drugs other than the single beer and portion of the marijuana cigarette, and the evidence does not indicate that he was intoxicated to the point that he was unaware of what was happening to him. Accordingly, we find Brown's argument to be without merit.

CCP
Next, Brown asserts that the evidence was insufficient to support the trial court's finding that the murder was cold, calculated and premeditated (CCP).[9] In order to establish the CCP aggravator, the evidence must show *279 that the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold), and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated), and that the defendant exhibited heightened premeditation (premeditated), and that the defendant had no pretense of moral or legal justification.
Jackson v. State, 648 So.2d 85, 89 (Fla.1994) (citations omitted); accord Walls v. State, 641 So.2d 381 (Fla.1994). While "heightened premeditation" may be inferred from the circumstances of the killing, it also requires proof beyond a reasonable doubt of "premeditation over and above what is required for unaggravated first-degree murder." Walls, 641 So.2d at 388. The "plan to kill cannot be inferred solely from a plan to commit, or the commission of, another felony." Geralds v. State, 601 So.2d 1157, 1163 (Fla.1992). In other words, the pre-designed plan to kill must be formed well before the commission of the murder itself. Perry v. State, 522 So.2d 817, 820 (Fla.1988).
In Castro v. State, 644 So.2d 987 (Fla. 1994), we invalidated the CCP aggravator where the facts failed to reveal evidence of calculation or heightened premeditation. We based this conclusion on the following facts:
The relevant facts of this case are that Castro came to Ocala and drank heavily for several days. He decided to leave town and concluded that he needed to steal a car to do so. When Castro saw Scott coming out of an apartment, he introduced himself and the two drank together in the apartment. Castro left on the pretext of getting ten dollars. Instead, he retrieved a steak knife from a neighboring apartment. When Castro returned, he saw Scott leaving the apartment but convinced him to return. The two drank a beer, then Scott again decided to leave. Castro grabbed Scott by the throat and squeezed so hard that blood came out of Scott's mouth. Scott struggled and scratched, but Castro told him, "Hey, man, you've lost. Dig it?" Castro got the steak knife and stabbed Scott between five and fifteen times. The medical examiner testified that she did not know in what sequence the chest wounds were inflicted or whether Scott lost consciousness after the strangulation.
Id. at 989. We held that "[w]hile the record reflects that Castro planned to rob Scott, it does not show the careful design and heightened premeditation necessary to find that the murder was committed in a cold, calculated, and premeditated manner." Id. at 991.
On the other hand, in Durocher v. State, 596 So.2d 997 (Fla.1992), we upheld the CCP aggravator. In so concluding, we reasoned as follows:
Durocher told the detective that he wanted to rob someone and steal a car so that he would have money and transportation for a trip to Louisiana. When he walked by the store where the victim worked, he decided to rob it. He then walked back to his mother's house, packed his clothes, picked up a shotgun he had previously purchased, and walked back to the store. At the store the clerk told Durocher that the business operated solely on credit and that there was no money on the premises. Durocher stood there for a few minutes and then shot the clerk and took thirty to forty dollars and his car keys from him. He told the detective: "I was going to rob the man but after thinking about it I decided it would probably be better to go ahead and kill him then that way the police could not pin it to me." Durocher then wiped his fingerprints off things he had touched, locked the store's front and back doors, and drove away in the victim's car. This sequence of events demonstrates the calculation and planning necessary to the heightened premeditation required to find the cold, calculated, and premeditated aggravator. Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).
Id. at 1001 (emphasis supplied).
Brown argues that because his initial intent was to rob the victim and steal his truck, that intent cannot be transferred to an intent to kill simply because a murder resulted *280 from the criminal episode.[10] In other words, Brown argues the State must show a heightened premeditation to murder beyond a pre-designed intent to commit robbery. Although we do not dispute Brown's assessment of the law, we disagree that the evidence was insufficient to support a finding of CCP.
Unlike the evidence in Castro and other cases cited by Brown, there was evidence presented here indicating that Brown carried out a carefully thought out and predesigned plan to commit murder. For example, upon his arrest, Brown admitted to the FBI agents that McGuire suggested when they first met that they find a car and kill the person who owned it. In addition, as the trial court found:
While at the victim's apartment, and after the victim went into his bedroom to go to bed, the defendant and co-defendant discussed in the balcony area robbing the victim of his motor vehicle and money. The defendant discussed with his co-defendant if the defendant should shoot the victim with the firearm the defendant brought with him, but decided the firearm would make too much noise. The defendant then went into the victim's kitchen and got two knives from the kitchen. The defendant then made cutting or stabbing gestures to his co-defendant indicating that the defendant intended to kill the victim with the kitchen knives. The defendant then told the co-defendant to position himself so that if the victim tried to escape from the bedroom while the defendant was trying to kill him, that the victim could not get past the co-defendant to the outside door. The defendant then entered the victim's bedroom and stabbed him multiple times.
Contrary to the cases relied upon by Brown, this was not a case of a robbery gone awry.
Brown carried a weapon into the victim's apartment and waited until the victim went to bed before further discussing the plan to kill the victim. Upon McGuire's discouraging remarks, and without any provocation, Brown then searched through the victim's kitchen for a different weapon before attacking the victim as he lay in bed. We find that sufficient time elapsed for Brown to form the necessary level of calculation and heightened premeditation to satisfy the CCP aggravator. Moreover, as noted above, there is little, if any, evidence that Brown was too intoxicated to form the necessary intent or that he was too impaired to conform his conduct to the requirements of the law.
Accordingly, we find that competent, substantial evidence supports the trial court's finding that this murder was committed in a cold, calculated and premeditated manner without any pretense of a legal or moral justification.

Proportionality
As his third claim, Brown argues that death is disproportionate to the facts in this case. He raises several arguments in support of this claim.
First, Brown argues that the two remaining aggravating factors (defendant previously convicted of a felony involving use or threat of violence on a person and murder committed for pecuniary gain merged with murder committed while engaged in the commission of a felony (robbery)) are not sufficiently compelling so as to warrant the imposition of the death penalty. Brown concedes the evidence supports the trial court's findings as to these two aggravating factors. However, he argues that his prior conviction of assault with a deadly weapon is less compelling than other cases where the defendant's prior record consists of murder. Brown premises this argument on the fact that the evidence was insufficient to establish that the murder was heinous, atrocious, or cruel, or that the murder *281 was cold, calculated, and premeditated. Because we are upholding the trial court's findings as to both the HAC and CCP aggravating factors, we find Brown's claim regarding the comparative weight of the remaining aggravators to be moot.
Second, Brown argues that the trial court improperly rejected several mitigating factors: impaired capacity to conform his conduct to the requirements of the law due to intoxication and drug abuse both on the day of and the two weeks prior to the murder; Brown's age (twenty-five) at the time of the murder; and the disparate treatment of Brown's codefendant, McGuire, who received a lighter sentence. Further, Brown contends that the trial court belittled his abusive upbringing by pointing out that Brown's mother, and not Brown, was physically abused by one of her husbands.[11] We find the latter claim to be without merit as the trial court clearly found Brown's family background to be a nonstatutory mitigating factor. The trial court's pointing out that Brown was not physically abused does not mean the court belittled Brown's family background or the difficulties he may have suffered in growing up. As for Brown's remaining arguments, we address each in turn.
Brown argues that the trial court erred in rejecting as a statutory mitigating factor that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired[12] due to excessive alcohol and drug use both on the day of and during the two weeks prior to the murder. We have held that evidence of impaired capacity due to intoxication must be considered as a mitigating factor where the existence of such facts is established by evidence anywhere in the record. Hardwick, 521 So.2d at 1076. However, evidence of alcohol and marijuana consumption on the day of the murder, without more, does not compel a finding of this mitigating factor. Cooper v. State, 492 So.2d 1059, 1062 (Fla.1986).
Here, despite Brown's claim that he smoked crack cocaine on the night of the murder and the existence of some evidence of alcohol consumption, there was no evidence that Brown was actually intoxicated at the time of the murder or that his capacity to conform his conduct to the requirements of the law was substantially impaired. To the contrary, the evidence indicates that Brown was coherent at the time of the murder and knew what he was doing. As the trial court found, "the defendant discussed murdering the victim with the co-defendant," he deliberately chose a knife rather than a firearm, "the defendant was able to stab the victim many times," and he searched the apartment for money and car keys before absconding with the victim's truck. We note, however, that despite the lack of sufficient evidence to establish this statutory mitigator, the trial court considered Brown's consumption of drugs and alcohol and found that it supported a nonstatutory mitigating factor. In light of the above evidence, we cannot say the trial court abused its discretion in rejecting this statutory mitigating factor. Accordingly, we find no error.
Brown also claims that the trial court erred in not finding his age (twenty-five years) at the time of the murder a mitigating factor.[13] This Court has held that trial courts may reject age as a mitigating factor where the defendants "were twenty to twenty-five years old at the time their offenses were committed" and there is no showing of immaturity or a comparatively low emotional age. Scull v. State, 533 So.2d 1137, 1143 (Fla.1988) (noting that defendant's age of twenty-four will not establish mitigator absent other evidence indicating defendant's *282 low emotional age). Here, Brown failed to establish any evidence that he suffered from a low emotional age compared to his chronological age. Nonetheless, the trial judge instructed the jury on age as a mitigating factor. The fact that the trial court later rejected Brown's age as a mitigating factor under the circumstances presented here does not constitute error.
Finally, Brown argues that the trial court improperly relied on McGuire's testimony in rejecting as mitigating factors that the offense was committed by another person and Brown's involvement was minor and that McGuire received a lighter sentence for his involvement in the murder. We disagree. Accomplices are competent to testify as witnesses despite the fact such evidence should be "relied on with `great caution.'" Smith v. State, 507 So.2d 788, 790 (Fla. 1st DCA 1987) (quoting Fla. Std. Jury Instr. (Crim.) 2.04(b)). The question of whether an accomplice is credible and the weight to be given to the testimony are issues for the jury to determine. Carter v. State, 560 So.2d 1166, 1168 (Fla.1990); Smith, 507 So.2d at 790. Here, the judge and jury were made aware of McGuire's guilty plea to the lesser offense of second-degree murder. McGuire also testified that his sentence was an upward departure sentence for the crime to which he pled guilty, in that his sentence was almost double that which he would have received under the sentencing guidelines. Although unhappy with his sentence, McGuire nevertheless honored his agreement with the State in testifying against Brown, thus reinforcing his credibility. Moreover, it was within the judge and jury's discretion to believe McGuire's testimony over Brown's.
Brown also asks this Court to consider the State's disparate treatment of McGuire. Where the circumstances indicate that the defendant is more culpable than a codefendant, disparate treatment is not impermissible despite the fact the codefendant received a lighter sentence for his participation in the same crime. See Howell v. State, 707 So.2d 674, 682 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 2381, 141 L.Ed.2d 747 (1998); Raleigh v. State, 705 So.2d 1324, 1331 (Fla.1997), cert. denied, ___ U.S. ___, 119 S.Ct. 105, ___ L.Ed.2d ___ (1998); Sliney v. State, 699 So.2d 662, 672 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1079, 140 L.Ed.2d 137 (1998); Heath v. State, 648 So.2d 660, 665-66 (Fla.1994). As noted above, McGuire pled guilty to seconddegree murder punishable by forty years in prison in exchange for his promise to testify against Brown.
Further, there was evidence submitted at trial indicating that Brown was the more culpable defendant. Brown's fingerprint matched a latent print found on one of the beer bottles and bloody shoeprints found at the scene of the crime positively matched tennis shoes worn by Brown. Further, Brown initially confessed to stabbing the victim multiple times in the chest and in the back. Although Brown also stated McGuire slit the victim's throat, such evidence ignores McGuire's testimony and does not exonerate Brown as the more culpable offender because the medical examiner testified that the neck wounds were nonfatal injuries, despite the substantial blood loss. The wounds to the chest and lower back, however, were fatal. Thus, the trial court acted within its discretion in rejecting as mitigating factors Brown's claim that he was the minor participant in the homicide and McGuire's lighter sentence. Accordingly, we find no error.
In reviewing a case in which the death penalty has been imposed, we must consider the totality of the circumstances in the case in comparison to other decisions from this Court and then decide if the sentence of death is appropriate in light of those other decisions. See Urbin v. State, 714 So.2d 411, 23 Fla. L. Weekly S257 (Fla.1998); Sliney, 699 So.2d at 672; Foster, 679 So.2d at 756; Terry v. State, 668 So.2d 954, 965 (Fla.1996). Here, the trial court found four valid aggravating factors (prior violent felony conviction; murder committed during robbery and pecuniary gain, merged; HAC; and CCP) and two nonstatutory mitigating circumstances (Brown's family background and Brown's drug and alcohol abuse). After comparing the totality of the circumstances in this case to other, similar cases in which we upheld the imposition of the death penalty, we find that Brown's sentence of death is not disproportionate. *283 See Gordon v. State, 704 So.2d 107 (Fla.1997) (affirming death penalty where evidence established four aggravating factors murder during commission of burglary, pecuniary gain, HAC, and CCPand only minimal evidence in mitigation for drowning murder and robbery of victim); Cole v. State, 701 So.2d 845, 852-53 (Fla.1997) (affirming death penalty where court found four aggravating factors, including HAC, prior violent felony for contemporaneous conviction, murder committed during kidnapping, and pecuniary gain, and only two nonstatutory mitigating factorsmental incapacity and deprived childhoodwhere defendant and accomplice killed victim by beating him in head and slitting his throat), cert. denied, ___ U.S. ___, 118 S.Ct. 1370, 140 L.Ed.2d 519 (1998).

Remaining Claims
We find Brown's remaining claims to be without merit. In claim four, Brown argues that the standard jury instruction in capital cases denigrates the jury's true role in sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). This Court has held that the standard jury instruction fully advises the jury of the importance of its role, correctly states the law, see Burns v. State, 699 So.2d 646 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1063, 140 L.Ed.2d 123 (1998), and does not denigrate the role of the jury. See Johnson v. State, 660 So.2d 637, 647 (Fla. 1995); Combs v. State, 525 So.2d 853, 855-56 (Fla.1988) (rejecting argument and holding Caldwell inapplicable to death penalty cases in Florida); Grossman v. State, 525 So.2d 833 (Fla.1988) (holding same), receded from on other grounds by Franqui v. State, 699 So.2d 1312 (Fla.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1337, 140 L.Ed.2d 499 (1998), and cert. denied, ___ U.S. ___, 118 S.Ct. 1582, 140 L.Ed.2d 796 (1998). Accordingly, we find this claim to be without merit.
In claim five, Brown raises seventeen challenges to the constitutionality of Florida's death penalty statute. This Court has previously considered and rejected these claims. See Henyard v. State, 689 So.2d 239 (Fla. 1996) (rejecting argument that HAC instruction is vague and unconstitutional), cert. denied, ___ U.S. ___, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997); Hunter v. State, 660 So.2d 244, 252-53 (Fla.1995) (rejecting multiple challenges to constitutionality of death penalty as without merit); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992) (holding same).

CONCLUSION
In summary, we affirm Brown's conviction of first-degree murder and sentence of death.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] These facts were established by the evidence presented at trial.
[2] Along the way, Brown and McGuire stopped at a gasoline station near Atlanta. After filling the car with gasoline. Brown handed McGuire's identification card to the attendant without paying for the gas. After they left, the attendant called the police and gave them McGuire's identification card. From this, the police were able to locate McGuire.
[3] Apparently, Brown was arrested by the F.B.I. for his involvement in a bank robbery in Tennessee.
[4] These aggravators include: (1) defendant was previously convicted of a felony involving the use or threat of violence to some person (assault with intent to commit armed robbery); (2) the murder was committed while engaged in the commission of a felony (robbery and burglary) and the murder was committed for financial gain, merged; (3) the murder was heinous, atrocious, or cruel (HAC); and (4) the murder was cold, calculated, and premeditated (CCP).
[5] The mitigators are: (1) Brown's family background and (2) Brown's alcohol and drug abuse prior to the commission of the crime.
[6] These issues are: (1) the trial court erred in instructing the jury and in finding that the murder was especially heinous, atrocious, or cruel; (2) the trial court erred in instructing the jury and in finding that the murder was committed in a cold, calculated and premeditated manner; (3) the death penalty is disproportionate; (4) the jury instructions improperly denigrated the jury's true role in sentencing the defendant to death, violating the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; (5) section 921.141, Florida Statutes (1991), is unconstitutional under the Florida and United States Constitutions.
[7] See § 921.141(5)(h), Fla. Stat. (Supp.1996). Brown relies on Kearse v. State, 662 So.2d 677 (Fla.1995), Shere v. State, 579 So.2d 86, 96 (Fla. 1991), Robinson v. State, 574 So.2d 108 (Fla. 1991), and Maggard v. State, 399 So.2d 973 (Fla. 1981), for the proposition that the HAC aggravator is inapplicable where there is no evidence that the defendant intended to torture the victim or that the victim experienced prolonged suffering. In each of these cases, however, the victims were killed instantaneously by gunshot and did not suffer death by stabbing. Therefore, these cases are factually distinguishable from the facts in the instant case. Brown also argues that the trial court erred in instructing the jury on the HAC aggravator because the evidence was insufficient to support a finding of HAC. Because we find competent, substantial evidence as to HAC, we reject Brown's claim.
[8] According to the expert on blood pattern interpretation, the victim was likely lying in his bed at the time he was initially stabbed and moved to the point in the room where his body ultimately was found upon collapse from substantial blood loss.
[9] See § 921.141(5)(i), Fla. Stat. (Supp.1996). Brown also argues that because the evidence does not support the CCP aggravator, the jury improperly considered an inapplicable aggravating factor. Because we hold the evidence supports a finding that the murder was committed in a cold, calculated and premeditated manner, we reject Brown's claim.
[10] Brown relies on Castro v. State, 644 So.2d 987 (Fla. 1994), Wyatt v. State, 641 So.2d 1336 (Fla. 1994), Vining v. State, 637 So.2d 921 (Fla. 1994), Lawrence v. State, 614 So.2d 1092 (Fla. 1993), Geralds v. State, 601 So.2d 1157 (Fla. 1992), Hardwick v. State, 461 So.2d 79 (Fla. 1984), receded from on other grounds by Patterson v. State, 513 So.2d 1257 (Fla.1987), Thompson v. State, 456 So.2d 444 (Fla. 1984), Gorham v. State, 454 So.2d 556 (Fla. 1984), and Maxwell v. State, 443 So.2d 967 (Fla. 1983). In each of these cases, however, there was no evidence of a heightened premeditated intent to kill the victim. Rather, the murder occurred during the course of the robbery or during an attempt to flee from the scene of the crime.
[11] During the penalty phase of the trial, Brown presented two witnesses who testified as to his abusive and difficult upbringing. One of these witnesses, Brown's grandmother, testified that Brown was born to an unwed mother; that as a child, Brown was shuffled back and forth between his grandmother and mother's home; that he was a well-behaved child but started getting into trouble when Brown's mother married a man by the name of Beaufort Adams; that Brown's mother was beaten by Mr. Adams and eventually started abusing drugs and alcohol; and that Brown's mother was sentenced to prison for murder when Brown was twenty-four or twenty-five years of age.
[12] See § 921.141(6)(f), Fla. Stat. (Supp.1996).
[13] See § 921.141(6)(g), Fla. Stat. (Supp.1996).