638 So.2d 920 (1994)
Richard W. RHODES, Appellant,
v.
STATE of Florida, Appellee.
No. 79627.
Supreme Court of Florida.
May 5, 1994.
Rehearing Denied July 11, 1994.
*922 James Marion Moorman, Public Defender and Robert F. Moeller, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Richard W. Rhodes appeals his sentence of death, which was imposed after a new sentencing proceeding before a jury. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and affirm.
Rhodes was convicted of the first-degree murder of a woman whose decomposing body was found in debris being used to construct a berm in St. Petersburg. The body was found on March 24, 1984. The debris came from the Sunset Hotel in Clearwater, which had been demolished on March 15, 1984. Manual strangulation causing the hyoid bone in the victim's neck to break was determined to be the cause of death. Although the only clothing found on the body was a brassiere around *923 the victim's neck, there was no physical evidence of sexual battery.
On March 2, 1984, Rhodes had been stopped by the Florida Highway Patrol in Hernando County while driving a car registered to the victim. After the body was identified, Rhodes was questioned and ultimately arrested for the murder. During the various interviews, Rhodes made different and sometimes conflicting statements, ultimately claiming that the victim died accidentally when she fell from the third floor of the Sunset Hotel. During the original trial, three of Rhodes' former cellmates at the Pinellas County Jail testified that Rhodes admitted killing the victim.
The jury found Rhodes guilty of first-degree murder and recommended that he be sentenced to death. The trial judge followed the recommendation. On appeal, the conviction was affirmed. However, because of various penalty phase errors, the death sentence was vacated and the cause was remanded for a new sentencing proceeding before a jury. Rhodes v. State, 547 So.2d 1201 (Fla. 1989).
On remand, Judge W. Douglas Baird presided over the proceedings. The newly empaneled jury recommended death by a vote of ten to two. Judge Baird, who did not preside over the original trial, followed the jury recommendation. In aggravation, the sentencing judge found: 1) Rhodes committed the murder while on parole; 2) Rhodes was previously convicted of a violent felony; and 3) the murder was committed while Rhodes was engaged in the commission of an attempted sexual battery.[1] In mitigation, he found: 1) Rhodes' age of thirty at the time of offense; and 2) Rhodes' capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.[2] Judge Baird refused to find that at the time of the murder Rhodes was under the influence of extreme mental or emotional disturbance[3] or that he was under extreme duress[4] due to alcohol consumption and his family history. However, he did find as nonstatutory mitigation that 1) as a child, Rhodes was abandoned by his parents; and 2) Rhodes never experienced a normal family life because as a child he was never placed in a social environment that could address his needs and he spent most of his life in state hospitals and prisons.
Although Rhodes' original conviction had been affirmed on appeal, on the same date that he issued the sentencing order, Judge Baird entered a second judgment of conviction for first-degree murder, dated March 20, 1992. Rhodes appeals the sentence of death and seeks to have the second judgment of conviction set aside.
Rhodes raises the following eight claims in this appeal: 1) the trial court erred by sua sponte excusing two prospective jurors; 2) the court erred in permitting the State to present hearsay evidence during the resentencing proceeding; 3) the court erred in permitting the State to interject irrelevant matters into the proceedings, including evidence of statements Rhodes made following his 1973 Oregon arrest, which were allegedly taken in violation of his constitutional rights; 4) the jury was misled regarding its role in the sentencing process and instructed to consider a nonstatutory aggravating factor; 5) the court erred in instructing the jury on and finding in aggravation that the murder was committed while Rhodes was engaged in committing an attempted sexual battery; 6) the court erred in failing to afford Rhodes an opportunity to be heard before he was sentenced; 7) death is not proportionately warranted in this case; and 8) one of the two written judgments for first-degree murder must be stricken.
Rhodes' first claim, dealing with the trial court's excusal of two prospective jurors for cause, was not adequately preserved below. During voir dire examination by the State both Jurors Blackham and Varellan expressed some difficulty in imposing the death penalty. Prior to examination by defense counsel, the court, sua sponte, sought to exclude *924 the two prospective jurors because of their reluctance to impose the death penalty.
We have held that a trial court's refusal to allow defense counsel to attempt to rehabilitate death-scrupled jurors on voir dire violated the defendant's due process rights. O'Connell v. State, 480 So.2d 1284 (Fla. 1985). However, unlike defense counsel in O'Connell, counsel in this case never asked to examine either juror. When asked if there was any reason the two jurors should not be excused for cause, defense counsel merely said that he would like to keep Ms. Blackham.
After counsel for Rhodes expressed a preference to keep Ms. Blackham on the jury, the court left it up to counsel to either question the two jurors and then let the State have another shot at them, or allow the jurors to be excused. However, after being given the option, defense counsel made no effort to rehabilitate either juror. Rather, counsel affirmatively acquiesced in the court's decision to excuse them, by stating, if you excuse them "for cause I can't say anything about it." Any claim that the court erred in refusing to allow the defense to examine Jurors Blackham and Varellan was waived by this apparent acquiescence in the court's decision to excuse the jurors for cause.
We also find no merit to Rhodes' second claim that hearsay was erroneously admitted during the resentencing proceeding. Because Rhodes failed to challenge the admission of much of the hearsay testimony addressed in this claim, those portions of the claim have been waived. Mordenti v. State, 630 So.2d 1080 (Fla. 1994) (absent fundamental error, claims not raised at trial are procedurally barred); Steinhorst v. State, 412 So.2d 332 (Fla. 1982) (same). Moreover, hearsay evidence is generally admissible in the penalty phase of a capital trial if the defendant is afforded a fair opportunity to rebut the evidence. § 921.141(1), Fla. Stat. (1991). We need only address Rhodes' challenges to the admission of hearsay statements contained in a doctor's report and to the admission of the prior testimony of his former cellmates.
Rhodes maintains that reversible error occurred when Gary Wright, a former Oregon police officer who provided evidence of Rhodes' 1973 armed robbery conviction, was asked to testify about the contents of a doctor's report that was made at the time of the 1973 arrest. Counsel objected based on the defense's inability to rebut the report and moved for a mistrial. Although the objection was sustained, the motion for mistrial was denied. The defense's request for an instruction to disregard any reference to the doctor's report was also denied because the court did not think that Wright had made reference to the report, but rather had merely testified that he, the witness, thought Rhodes was faking.
A review of the record reveals that when asked what the doctor's report said about Rhodes' mental condition at the time of the 1973 offense Wright responded "that he did not appear to have a mental condition, as I recall. I don't have the particular report here with me today. But his actions on the 26th appeared to be fake to me." Thus, it appears Wright did testify, however briefly, regarding the contents of a report the defense had no opportunity to rebut. While this was error, the trial court did not abuse its discretion by denying the motion for mistrial. Breedlove v. State, 413 So.2d 1, 7 (Fla.) (mistrial not warranted where error does no substantial harm), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Although the error was not serious enough to warrant a mistrial, we agree that the requested instruction to disregard any reference to the report should have been given. See Id. (when error occurs, curative instruction generally should be given when mistrial is not warranted). However, we find the failure to give the instruction harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The reference to the report was very brief and, as noted by the trial court, Wright's answer dealt primarily with his impression of Rhodes' mental state at the time of Rhodes' arrest. It also does not appear that the doctor's report was relied on by the State.
Although defense counsel raised an initial objection to the admission of the prior *925 testimony of the three former cellmates who testified at the original trial, he appears to have acquiesced in the trial court's decision to admit the testimony. Before the testimony was read to the jury, defense counsel raised the issue of whether the "jailhouse snitches" were truly unavailable for purposes of Florida Rule of Criminal Procedure 3.640(b), which addresses the admission of former testimony at a new trial.[5] Counsel raised the issue "for the record," but also expressly left the determination up to the court. The prosecutor then represented to the court that all three witnesses were in prison. Defense counsel agreed to allow the State's "unavailability" witness to testify after the prior testimony was read to the jury.
When called to testify concerning the whereabouts of the three former witnesses, Joy Walker told the court that the three men were in various prisons, one in Daytona Beach and two in other states. When asked by defense counsel whether any attempts were made to have the prisoners appear at the current proceedings, Ms. Walker stated that she was not aware of any. After cross-examining Ms. Walker, defense counsel appears to have acquiesced in the court's decision to admit the testimony because no further argument was presented on the issue.
As his third claim Rhodes argues that the State was allowed to interject and introduce irrelevant matters into the proceedings. We find no merit to Rhodes' first contention that it was error for the State to detail how Rhodes allegedly strangled the victim in its opening statement to the jury because the manner of death was relevant only to prove the inapplicable aggravating factors of heinous, atrocious, or cruel, and cold, calculated, and premeditated. The State clearly is entitled to present its version of the facts in its opening statement.
Rhodes next contends that it was error to allow Gary Wright to testify about how Rhodes obtained the weapon used in the 1973 armed robbery. This Court explained in Rhodes' prior appeal that although it is proper to introduce testimony concerning the details of a prior violent felony conviction, there are limits on the admission of such testimony. The line must be drawn when the evidence is not relevant or gives rise to a violation of the defendant's confrontation rights or the prejudicial value of the evidence outweighs its probative value. 547 So.2d at 1204; see also Duncan v. State, 619 So.2d 279, 282 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 453, 126 L.Ed.2d 385 (1993). Because evidence of how the weapon used in the prior violent felony was obtained was not necessary to establish the aggravating factor, Rhodes argues that the prejudicial effect of the evidence outweighs any relevance the evidence might otherwise have had. See Duncan, 619 So.2d at 282 (probative value of gruesome photo of prior murder victim that was not necessary to prove aggravating factor was outweighed by prejudicial effect). However, it appears the State had Wright explain the calculated manner in which the weapon was obtained to rebut any inference of long-term mental problems being at the root of the prior offense as well as being the cause of the murder. Under the circumstances, the trial court did not abuse its discretion in allowing the testimony.
Rhodes next contends that statements he gave in connection with the 1973 offense and that were recounted during Gary Wright's testimony should have been excluded because they were taken in violation of his right to remain silent. A review of Wright's testimony reveals that the trial court's finding that the statements were knowingly and voluntarily made is supported by the record. Thus, the court's ruling on the motion to suppress must be upheld. Owen v. State, *926 560 So.2d 207, 211 (Fla.) (ruling on motion to suppress is presumed correct and will be upheld if supported by the record), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990).
Finally, in connection with this claim, Rhodes maintains that it was reversible error to allow the State on redirect to question Wright regarding his knowledge of Rhodes' prior "troubles with the law." On redirect, the prosecutor asked Wright about his knowledge of Rhodes' past. Wright responded that he knew Rhodes had "been in mental institutions, in jail, he had been arrested on numerous occasions." The prosecutor then asked, "Been in trouble with the law alot?" To which Wright began to answer, "Yes, sir, and that he  ." Defense counsel objected and requested that the jury be instructed to disregard the prior arrests. The objection was overruled, but the prosecutor was warned not to go any further with that line of questioning.
It is improper for the prosecution to inquire about collateral crimes committed by the defendant that are unconnected with the crime for which the defendant is on trial and are not relevant to a material fact in issue. Czubak v. State, 570 So.2d 925, 928 (Fla. 1990). Admission of evidence of a defendant's prior arrests generally is so prejudicial as to require reversal. See, e.g., Dixon v. State, 426 So.2d 1258, 1259 (Fla. 2d DCA 1983). However, here, the State appears to have offered testimony of Rhodes' brushes with the law to show that Rhodes was familiar with police procedures and thereby support its position that Rhodes knowingly and voluntarily waived his Miranda[6] rights before giving the statements that were taken in connection with the prior violent felony conviction. Moreover, any error was harmless, in light of the fact that the questioning was limited by the court, the prior encounters with the law were not focused upon by the State, and there was other evidence of Rhodes' prior criminal acts.
Rhodes' Caldwell[7] claim that the jury's role in the sentencing process was improperly diminished by the prosecutor during voir dire and by the court in its instructions was not preserved by contemporaneous objection. Combs v. State, 525 So.2d 853, 856 (Fla. 1988); Jackson v. State, 522 So.2d 802, 809 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). Moreover, Rhodes' jury was instructed that its recommendation would be given great weight.
As part of his fourth claim, Rhodes points out that while instructing the jury on aggravating circumstances, the trial court misspoke, and erroneously instructed the jury on a felony involving the use of a firearm rather than on a felony involving the use of violence, as provided in section 921.141(5)(b). The jury was instructed that it could consider that the defendant had "been previously convicted of a felony involving the use or threat of use of a firearm, the crimes of Armed Robbery, Assault, Attempted Robbery, and Battery with a Deadly Weapon are felonies involving the use or threat of use of violence to another person." The prosecutor brought the misinstruction to the trial court's attention. The trial court then told the jury that if it had any questions concerning the instructions to refer to the written copy that was taken to the jury room. The written instructions contained a correct statement of the law. Because defense counsel voiced no objection to this curative procedure, we agree with the State that the issue has been waived.
We also find that there was sufficient evidence that the murder was committed during an attempted sexual battery to justify the giving of the jury instruction and to support the trial court's finding of this aggravating factor. The victim's body was found clad in only a brassiere, which was up around the victim's neck. Most of the various stories told by Rhodes suggested some form of sexual activity had taken place during his encounter with the victim. Specifically, Rhodes told several witnesses that the victim resisted his sexual advances. On the same basic evidence, this aggravating factor *927 was upheld in Rhodes' original appeal. 547 So.2d at 1207-08.
Rhodes next claims that contrary to this Court's decision in Spencer v. State, 615 So.2d 688, 690-91 (Fla. 1993), he was deprived of an opportunity to be heard personally prior to sentencing. The record refutes this claim too. The jury returned its recommendation on February 14. Actual sentencing did not take place until March 20. Before he was sentenced, Rhodes was given an adequate opportunity to address the court at a March 17 hearing. On that date, Rhodes was asked to confirm that there were no other witnesses, no other evidence, and no other testimony that he wished to present. Rhodes agreed that there was none. Thus, it is clear that the March 20 sentencing order was not prepared before Rhodes was given an opportunity to be heard, as was done in Spencer. 615 So.2d at 690.
As part of this claim, Rhodes raises other challenges to the sentencing process,[8] none of which merit discussion.
Rhodes' proportionality claim is based on the premise that 1) there is insufficient evidence that the murder was committed during an attempted sexual battery and 2) the two remaining aggravating factors[9] are not significant. We previously rejected the first part this argument. Our review of the record and sentencing order reveals that the aggravating and mitigating factors were properly weighed by the trial court. While substantial mental mitigation was established in this case, we have considered Rhodes' death sentence in relation to other death penalty cases and conclude that the sentence is proportionate.
However, we agree with Rhodes' final claim that the judgment of conviction for first-degree murder entered by Judge Baird on March 20, 1992, must be vacated. The March 20 judgment is extraneous, in light of our affirmance of the September 1, 1985, judgment, which still stands. 547 So.2d at 1208.
Accordingly, we affirm the sentence of death but vacate the March 20, 1992, judgment of conviction.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] §§ 921.141(5)(a), (b), (d), Fla. Stat. (1991), respectively.
[2] §§ 921.141(6)(g), (f), Fla. Stat. (1991), respectively.
[3] § 921.141(6)(b), Fla. Stat. (1991).
[4] § 921.141(6)(e), Fla. Stat. (1991).
[5] Florida Rule of Criminal Procedure 3.640(b) provides:

The testimony given during the former trial may not be read in evidence at the new trial unless it is that of a witness who at the time of the new trial is absent from the state, mentally incompetent to be a witness, physically unable to appear and testify, or dead, in which event the evidence of such witness on the former trial may be read in evidence at the new trial as the same was taken and transcribed by the court reporter. Before the introduction of the evidence of an absent witness, the party introducing the evidence must show due diligence in attempting to procure the attendance of witnesses at the trial and must show that the witness is not absent by consent or connivance of that party.
[6] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[7] Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[8] The claims include: 1) it was error for the trial court to familiarize itself with the original trial and the decision on direct appeal; and 2) it was error to reject certain statutory mitigating factors under the section of the order addressing nonstatutory mitigating circumstances.
[9] Prior conviction of a violent felony, and on parole at the time of the murder.