846 So.2d 1114 (2003)
Paul Anthony BROWN, Appellant,
v.
STATE of Florida, Appellee.
Paul Anthony Brown, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC01-1275, SC01-2713.
Supreme Court of Florida.
April 24, 2003.
*1117 John J. Bonaccorsy, Daytona Beach, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Judy Taylor Rush, Kenneth S. Nunnelley, and Douglas T. Squire, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Paul Anthony Brown, an inmate under sentence of death, appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const. These cases have been consolidated. For the reasons that follow, we affirm the denial of Brown's postconviction motion and deny the petition for writ of habeas corpus.
FACTUAL AND PROCEDURAL BACKGROUND
Brown was found guilty of first-degree murder and sentenced to death based on the following facts:

*1118 On November 6, 1992, Roger Hensley ("Hensley") was found dead on the bedroom floor of an apartment in Ormond Beach, Florida. He had been stabbed multiple times and his throat had been slashed. The police found two steak knives on the floor in the living room, one of which was covered in blood. Investigators documented blood spatter in several areas of the victim's bedroom and bathroom, as well as fingerprints and bloody shoe prints inside the apartment. Investigators also discovered several empty beer bottles and a bag of a substance presumed to be marijuana. Missing were the victim's white Nissan pick-up truck and keys thereto.
In October of 1992, Brown traveled from Tennessee to Daytona Beach where he met Scott Jason McGuire ("McGuire"). McGuire moved into Brown's motel room and the two spent the next two weeks consuming alcoholic beverages and smoking crack cocaine. At some point Brown decided to return to Tennessee. According to McGuire, Brown offered him $1000 to drive Brown to Tennessee but McGuire's vehicle did not work.
Thereafter, on November 5, Brown and McGuire approached Roger Hensley outside of a bar and, with Hensley driving, accompanied him to his apartment. McGuire testified that during the drive, Brown held a gun behind Hensley's seat. McGuire also claimed that during before [sic] entering Hensley's apartment, Brown whispered, "How would you like to do it?," to which McGuire made no response. Inside, the three men each drank a bottle of beer, shared half of a marijuana cigarette, and talked about various things, including employment possibilities. Hensley invited Brown and McGuire to spend the night. However, before retiring to his bedroom, Hensley dropped a few dollars on the table and stated, "I don't know what you guys' game is. If you've come here to rob me, this is all the money I have. You can take it." McGuire assured Hensley that they were not there to rob him and Hensley went to bed.
After Hensley left the room, Brown told McGuire he was going to shoot Hensley and steal his truck. McGuire objected to the use of the gun because of the noise. Appearing angry at McGuire's response, Brown walked to the kitchen and got two steak knives, handing one to McGuire. McGuire threw the knife to the ground and denounced any intention of taking part in murder. Brown said he would take care of it himself and, in a symbolic gesture, dragged his hand across his throat.
Brown told McGuire to stand by the door to block Hensley's escape and he entered the bedroom where Hensley was lying on the bed. McGuire then heard what he thought were stabbing sounds and heard the victim say "no." Upon hearing something hit the floor, McGuire approached the bedroom where he noticed Hensley lying on the floor covered in blood and "making sounds" as if he was "struggling to breathe." Brown was rummaging through the victim's bedroom looking for car keys. He found the victim's wallet and removed a twenty-dollar bill. Brown, who had blood on his hands, arms, and pants, then tried to wash it off. McGuire did not have any blood on him, but attempted to wipe his fingerprints from everything in the apartment that he had touched.
Ten or fifteen minutes later, the two left the victim's apartment in Hensley's truck, stopped at their motel room to collect their belongings, and drove to Tennessee. There, Brown burned his bloody pants in a stove and McGuire *1119 departed on foot a day or two later. Brown was arrested on November 8 at a farmhouse in Tennessee by agents from the Federal Bureau of Investigation (F.B.I.) on unrelated charges.
While in the custody of the F.B.I., Brown stated, "I'm a murderer, not only a bank robber", and declared that he and another man named "Scott" killed "a white male" in Daytona Beach and stole his truck. Brown explained how the two met the victim and went back to the victim's "motel room", where they smoked "crack" cocaine and then stabbed and killed the victim. Brown claimed that it was McGuire's suggestion that they find someone who owned a car, steal the car, and kill the owner. He also claimed that he stabbed the victim several times in the chest and once in the back but that McGuire slit the victim's throat. Brown's statements to the FBI were admitted in evidence at trial.
Brown also testified at trial and denied any involvement in the homicide, claiming instead that McGuire killed Hensley while Brown was asleep as a result of smoking marijuana. Brown testified that he awoke to find Hensley standing over him with a bloodied knife. He claimed that McGuire had stabbed Hensley once in the back and was attempting to slit his throat. Brown also claimed that after they left the apartment, McGuire threatened to frame him for the murder if Brown told anyone about it.
Brown v. State, 721 So.2d 274, 275-76 (Fla. 1998) (footnotes omitted).
Brown was charged with first-degree murder and first-degree felony murder, and was convicted by a jury. Id. at 276. Following the penalty phase proceeding, the jury voted twelve to zero to recommend the death penalty. Id. at 277. On a finding of four aggravating circumstances[1] and two nonstatutory mitigating circumstances,[2] the trial court accepted the jury's unanimous recommendation and sentenced Brown to death. Id. We affirmed Brown's conviction and sentence on direct appeal. Id. at 275.
Brown filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on November 3, 2000. He filed an amended 3.850 motion on February 12, 2001, and a second amended motion on April 26, 2001, raising twenty-one claims.[3] The trial court granted an evidentiary *1120 hearing, which was held on April 26-27, 2001. Subsequent to the hearing, the trial court entered a comprehensive order denying Brown all relief. Brown appeals that denial to this Court and also petitions this Court for a writ of habeas corpus.

3.850 APPEAL
Brown raises three claims in his 3.850 appeal: (1) that trial counsel rendered ineffective assistance of counsel, (2) that he is entitled to a new trial based on newly discovered evidence, and (3) that the cumulative effect of the errors resulted in an unfair proceeding.
Ineffective Assistance of Counsel
Brown raises numerous subclaims, in which he presents conduct that he believes represents ineffective assistance of counsel. We have rearranged the order of the subclaims presented by Brown, and will discuss them in the following order: (1) insufficient impeachment, (2) failure to object, (3) opening the door to damaging testimony by FBI agent Robert Childs, and (4) improper argument.
The framework for analyzing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the Supreme Court said:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based *1121 on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Therefore, this Court must engage in an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id.[4]
Insufficient Impeachment
Brown argues that trial counsel was deficient in his cross-examination of Scott McGuire, and he raises several instances of alleged ineffective performance in that regard.[5] However, these instances satisfy neither the requirement of deficient performance nor the requirement of prejudice under Strickland.
Noting that Brown's own detailed oral and written confessions convicted Brown, the trial court found that the matters raised as examples of insufficient impeachment were relatively insignificant matters. Furthermore, the judge ruled that if counsel's performance was indeed deficient, there was not a reasonable probability that the outcome of the trial would have been affected.
We conclude that collateral counsel's argument that counsel should have cross-examined McGuire on certain issues, or more strenuously examined him on certain issues, is essentially a hindsight analysis. "The standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995). We find no error in the trial court's analysis or conclusion.
Brown also contends that counsel was ineffective for failing to specifically ask each of the witnesses at trial whether Brown confessed to them. The trial court ruled, and we agree, that counsel's failure to engage in this line of questioning was *1122 not deficient performance, especially considering that some of the witnesses were never in contact with Brown.
Failure to Object
Brown also alleges that counsel's failure to object at several points during his trial constituted ineffective assistance of counsel. First, Brown cites a number of the prosecutor's closing argument comments, which he alleges invoked improper opinion or belief. Brown asserts that defense counsel's failure to object to these statements constituted prejudicial error. The trial court found that counsel was not deficient in failing to object to the prosecutor's statements. Noting counsel's hearing testimony in which he stated that being judicious with his objections is a part of his style, in order to avoid antagonizing the jury and losing credibility, the court found no demonstration of ineffectiveness or prejudice.
The instant case is similar to Chandler v. State, 702 So.2d 186 (Fla.1997), in which the prosecutor stated that the defendant was a "malevolent ... a brutal rapist and conscienceless murderer," and Moore v. State, 820 So.2d 199, 208 (Fla.2002), in which the prosecutor made isolated comments referring to the defendant as the "devil." In Chandler, this Court found that none of the complained-of comments were "so prejudicial as to corrupt the whole trial." 702 So.2d at 191 n. 5. Having reviewed the challenged prosecutorial comments in the instant case, we find that the prosecutor's comments were insufficient to undermine confidence in the outcome. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Therefore, we find no error in the trial court's conclusion that even if counsel's failure to object to the prosecutor's remarks amounted to deficient performance, any prejudice suffered by Brown was slight, and does not rise to the level required under Strickland to merit relief.
Brown also argues that counsel was ineffective for failing to object to Scott McGuire's testimony regarding statements made by the victim, Roger Hensley. The trial judge ruled that counsel's failures to object to the statements made by McGuire were "trial tactics on his part not to object to what he perceived as very minor hearsay matters." The judge then added that any prejudice Brown felt as a result of counsel's performance, if found to be deficient, did not demonstrate prejudice as required by Strickland. Upon review, we agree that counsel's performance was not deficient, and therefore, Brown's claim does not merit relief.
Brown also argues that counsel was deficient for failing to object to a number of leading questions asked by the prosecution. This failure, Brown asserts, resulted in assisting the State to prove him guilty. The trial judge noted that many of the leading questions related to minor issues, and that counsel's decision not to object was trial strategy. He also found that even if there was deficient performance, prejudice was not established. We concur in the trial court's evaluation that, considering trial counsel's philosophy, it does not appear to be deficient performance on his part not to object. "Counsel's strategic decisions will not be second-guessed on collateral attack." Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) (citing Remeta v. Dugger, 622 So.2d 452 (Fla.1993)).
Brown also argues that counsel was ineffective for failing to object when McGuire testified that he was telling the truth. Brown argues that McGuire's statement that he was telling the truth constituted improper opinion bolstering. This claim is properly considered first in the context of Strickland's prejudice *1123 prong. This Court has stated that a claim need not be analyzed in the order set forth in Strickland, where it is clear that the prejudice prong cannot be met. See Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001).
Of course, McGuire's testimony was preceded by the administration of an oath, by which McGuire attested that his testimony was truthful. Further, although McGuire was permitted to indicate that he was telling the truth, his testimony to that effect, as indicated in Brown's own brief, also stated that he was telling the truth to help himself. Furthermore, this testimony occurred on direct examination, after which trial counsel had the opportunity to cross-examine McGuire, and did so. Therefore, any harm done to Brown by McGuire's statement that he was telling the truth was countered by the fact that the jury was presented with evidence showing that McGuire had his own motives for testifying. Under Strickland, we find no error in the trial court's conclusion that this claim merits no relief.
Brown also argues that counsel was deficient for failing to object when a witness identified an autopsy photo of the victim, and responded that the victim appeared in a worse condition than the witness had ever seen him. The trial judge found that although the witness's comment was not relevant, counsel's failure to object to the statement did not constitute deficient performance nor was prejudice established.
This claim represents another instance that can be disposed of under Strickland's prejudice prong. At the point when the witness testified, the jury had already heard testimony about the crime scene from the maid who discovered the body, as well as from a detective who investigated the crime scene and was used to authenticate photos of the crime scene. Some of the photos included a view of the victim. Arguably, this evidence was even more harmful than the witness's statement, and it highlights the overall insignificance of any prejudice flowing from the statement. Additionally, we conclude counsel's failure to object to the comment did not constitute deficient performance, as it reflected counsel's deliberate decision not to bring attention to the comment by objecting to it. Therefore, this claim fails both prongs of the Strickland analysis.
Brown further argues that trial counsel was ineffective for not objecting to certain comments the prosecutor made during opening statement. Again, the trial judge found that counsel's actions were the result of tactical decisions, noting counsel's testimony regarding his philosophy of not being an obstructionist and sticking to the major issues. Furthermore, the court ruled that even if the failure to object to the prosecutor's comments was deficient, no prejudice was demonstrated. In Rhodes v. State, 638 So.2d 920 (Fla.1994), this Court found no error in the State's opening statement where it detailed the manner in which the victim was killed. The State, this Court said, "clearly is entitled to present its version of the facts." Id. at 925.
Like Rhodes, we find that counsel's failure to object to the prosecutor's comments cannot reasonably be considered deficient performance. Trial counsel's decision not to object was a strategic decision that should not be second-guessed. See Johnson, 769 So.2d at 1001. Furthermore, we find that counsel's failure to object did not prejudice Brown to the extent required under Strickland.
Opening the Door: FBI Agent Robert Childs
Brown also claims that counsel was ineffective when he opened the door to *1124 damaging testimony by FBI agent Robert Childs, which led to the admission of evidence of an armed standoff between Brown and FBI agents prior to Brown's arrest in Tennessee. On re-cross, trial counsel asked FBI agent Robert Childs whether Brown had been given anything to drink by the agency on the day that he was arrested. Counsel opened the door to damaging testimony via this inquiry, because the State was then allowed to draw out testimony that Brown was involved in a two-hour armed standoff with FBI agents prior to his arrest, and that the alcohol, in this case whiskey, was used as an incentive to get Brown to surrender.
Brown's claim is similar to one that this Court rejected in Johnson v. State, 769 So.2d 990 (Fla.2000). In Johnson, the defendant was on trial for multiple murders, as well as other felonies. At trial, counsel opened the door to testimony that the defendant had previously claimed that he would "act crazy." Id. at 1000. On appeal, Johnson claimed that counsel's action constituted ineffective assistance of counsel. At his evidentiary hearing, Johnson's counsel indicated that he had a specific purpose for eliciting the testimony, to get evidence of defendant's substantial drug use before the jury, even if it meant that the defendant's potentially damaging statement would also be placed before the jury. In affirming the circuit court's decision and refusing to grant relief on Johnson's ineffective assistance of counsel claim, this Court gave great deference to the trial strategy, saying, "Counsel's strategic decisions will not be second-guessed on collateral attack." Id. at 1001. As in Johnson, trial counsel had a specific purpose for eliciting the testimony regarding the alcohol given to Mr. Brown. He hoped that this testimony would cast doubt on perhaps the most damaging pieces of evidenceBrown's own incriminating statements while in FBI custody.
The trial judge did find that it was improper for counsel to open the door to the testimony about the armed standoff with Brown. However, the court also specifically found that the prejudice prong of the Strickland test had not been met, that opening the door to the agent's testimony did not prejudice the outcome of the trial to the extent that Brown's guilty verdict was rendered unreliable. In making that determination, the trial court emphasized Brown's own confession and its harmonization with the physical evidence that linked Brown to the murder.
We find no error in the trial court's analysis. Even if counsel was deficient in opening the door to Agent Childs' testimony, we do not find that Strickland's prejudice requirement is satisfied. Even in the absence of the evidence about the standoff, the jury was still exposed to Brown's own incriminating statements, overwhelming physical evidence, and witness testimony connecting Brown to the victim's murder. Therefore, any harm done by Childs' testimony was neutralized, and the reliability of the proceeding was not compromised.
Brown also asserts that counsel was deficient for failing to depose Agent Childs before trial. This Court has held that when a failure to depose is alleged as a part of an ineffective assistance of counsel claim, the appellant must specifically set forth the harm from the alleged omission, identifying "a specific evidentiary matter to which the failure to depose witnesses would relate." Magill v. State, 457 So.2d 1367, 1370 (Fla.1984). Here, Brown asserts that the failure to depose Childs ultimately resulted in the testimony about the armed standoff being admitted into evidence. This testimony, Brown claims, led the jury to convict him on the basis that he was a violent person. In his ruling, the trial judge tied this claim in with *1125 the other claim regarding Robert Childs, that counsel's performance was deficient where he opened the door to Childs' damaging testimony about the armed standoff with FBI agents. However, the judge likewise ruled that counsel's failure to depose Childs, while it may have been deficient performance, did not satisfy Strickland's prejudice prong.
While we agree that counsel's performance with respect to his handling of Childs' testimony may have been deficient, thereby satisfying the first prong in the Strickland analysis, we find no error in the trial court's conclusion that any deficient performance did not prejudice Brown to the extent that the outcome of the trial was compromised. Again, as the State notes, substantial evidence notwithstanding the testimony about the armed standoff was presented to the jury before it convicted Brown.

Improper Argument
Brown also alleges that counsel was ineffective due to remarks he made in his opening statement. Counsel said:
Mr. McGuire and Mr. Brown, they don't go play golf together. They don't do things like that. They do things like consume a lot of alcohol. They do crack cocaine. They hang out on the Boardwalk area, unemployed. It's not a good life and it's not ait's not something any of us would do, but it's just athat's the way it was.
Based upon his evaluation of the testimony presented, the trial court found that counsel made a tactical decision to make the statements that he did, for the purpose of trying to dilute some of the damaging testimony the jury would later hear. In other words, defense counsel was explaining the real world the defendant lived in. Further, the court concluded again that sufficient prejudice had not been established. We again find no error in the trial court's conclusions.
Brown also alleges that counsel was ineffective as a result of stating that the victim was "gurgling" on his own blood. Counsel's comment is consistent with his explanation at the evidentiary hearing that he was trying to point out the overdramatization of the prosecutor's argument. The trial court found that counsel's statement did not prejudice Brown. Again, we emphasize that this Court will not second-guess counsel's strategic decisions on collateral attack. See Johnson, 769 So.2d at 1001. Counsel's comment, when weighed against the two-part test in Strickland, does not satisfy either prong. Though the word "gurgling" may have shock value, it does not rise to the level required by Strickland, particularly where, as here, trial counsel chose to use the word as a method of rebutting and minimizing the State's argument.
Brown also asserts that counsel was ineffective as a result of making certain comments, including stating that Brown had "turned bad." At the evidentiary hearing, counsel testified that his purpose in making such a statement was to be honest with the jury about what type of person they were dealing with. The trial judge found that this statement was a reasonable trial tactic on counsel's part, that he was just being honest with the jury, and that it was not ineffective or deficient.
We agree with the trial court's determination. Counsel's comment was made during the penalty phase, a point at which Brown had already been found guilty of first-degree murder. At that point, counsel sought to lessen negative juror sentiment against Brown, and appealing to the jurors by pointing out Brown's real life shortcomings was a tactic geared toward Brown's benefit. Brown's assertion that *1126 this particular statement led the jurors to vote to recommend the death penalty is wholly speculative. Therefore, Brown's argument merits no relief.
Brown also claims that counsel was ineffective for failing, in closing argument, to make arguments that would have supported the defense theory of the case and that would have impeached the credibility of the State's star witness, for making a statement of concession not supported by the evidence, and for making a statement prejudicial to Brown's interests. Here, Brown raises and repeats many of the same issues already raised, only this time based on ineffective assistance of counsel in closing argument. These points can be summarily disposed of, because they can hardly be found to constitute error under this claim if they are not found to be error on other bases. "Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed to persuade the jury." Ferguson v. State, 593 So.2d 508 (Fla.1992). Thus, we deny Brown relief on his ineffective assistance of counsel claim.
Newly Discovered Evidence
Brown's second argument on appeal is based on newly discovered evidence. Following trial, Brown became aware of Scott McGuire's use of an alias, as well as a conviction McGuire received for aggravated burglary in Ohio and his subsequent escape from a correctional institution there. Brown asserts that his newly discovered evidence justifies the granting of a new trial because it would have shown that McGuire, not Brown, killed Roger Hensley to avoid detection, and this information, had it been available at trial, would have sufficiently impeached McGuire's testimony so as to make him wholly incredible.
In order to obtain a new trial on the basis of newly found evidence, Brown was required to show that the evidence was "unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of the evidence] by the use of due diligence." Hallman v. State, 371 So.2d 482, 485 (Fla. 1979). Additionally, the evidence must be of such a nature that it would probably produce an acquittal on retrial. Jones v. State, 591 So.2d 911, 916 (Fla.1991).
On review, we find that Brown's claim of newly discovered evidence does not warrant a new trial under the strict test set out in Jones. The probability that this evidence would have resulted in Brown's acquittal at trial is extremely remote, at best, in light of the other evidence presented to the jury. Therefore, we find no error in the trial court's determination that Brown is not entitled to relief on the basis of newly found evidence.

Cumulative Evidence
Brown asserts that the cumulative effect of counsel's errors require that this Court grant him relief. The trial court quickly disposed of Brown's cumulative error claim based upon its rejection of the individual claims. Each of Brown's claims is insufficient under Strickland, and because this is the case, the claim for cumulative error fails as well. See Bryan v. State, 748 So.2d 1003, 1008 (Fla.1999) (concluding that defendant's cumulative effect claim was properly denied where individual allegations of error were found to be without merit). Therefore we also deny Brown relief on the grounds of cumulative error.

*1127 HABEAS CORPUS PETITION

Brown's petition for writ of habeas corpus contains two claims alleging ineffective assistance of appellate counsel. Claims of ineffective assistance of appellate counsel are appropriately raised in a petition for writ of habeas corpus. Freeman v. State, 761 So.2d 1055, 1069 (Fla. 2000). In order to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). "The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069. We address both of Brown's claims.

Ineffective Assistance of Appellate Counsel: Failure to Object
Brown asserts that appellate counsel was ineffective for failing to raise on direct appeal prosecutorial misconduct which occurred during his guilt phase closing argument even though the alleged misconduct was not objected to at trial. This Court has held that "appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object." Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996). "A timely objection allows the trial court an opportunity to give a curative instruction or admonish counsel for making an improper argument." Card v. State, 803 So.2d 613, 622 (Fla.2001).
Brown asserts, however, that this claim survives the threat of being procedurally barred because the prosecutor's comments rose to the level of fundamental error. This Court has acknowledged an exception to the contemporaneous objection rule where fundamental error has occurred as a result of unobjected-to comments. Fundamental error is the type of "error that reaches down into the validity of the trial itself to the extent that a verdict of guilty... could not have been obtained without the assistance of the alleged error." Id. In determining whether fundamental error has occurred where improper comments are not objected to, this Court examines the totality of the alleged errors. See id.
In Card, the appellant was convicted of first-degree murder and sentenced to death. He contended that objected-to and unobjected-to prosecutorial comments during closing argument deprived him of a fair trial. With respect to both the preserved and the unpreserved comments, this Court ruled that any errors that occurred on closing argument did not compromise the process or deprive Card of a fair trial. Importantly, this Court noted, "[T]he trial court found five aggravating circumstances, including CCP and HAC, two of the `most serious aggravators set out in the statutory sentencing scheme,' no statutory mitigation, and insignificant nonstatutory mitigating circumstances." Id. (citation omitted).
The factors presented here are much like those in Card, in that Brown was sentenced to death following a finding of four aggravating factors, including CCP and HAC, no statutory mitigation, and two nonstatutory mitigating factors. Additionally, Brown confessed in detail to his *1128 crime, significant physical evidence supported the State's case, and the jury voted unanimously to recommend the death penalty.
We have already concluded under Brown's 3.850 appeal that the prosecutor's remarks during closing argument did not contribute in any substantial way to the jury's recommendation of death for Brown. It is also our conclusion that the prosecutor's remarks did not rise to the level of fundamental error needed to survive a procedural bar.
Appellate counsel, this Court has said, "cannot be deemed ineffective for failing to raise non-meritorious claims on appeal, or claims that do not amount to fundamental error." Happ v. Moore, 784 So.2d 1091, 1095 (Fla.2001) (citation omitted). Appellate counsel was not ineffective for failing to raise these issues because they are procedurally barred and do not constitute fundamental error.

Ineffective Assistance of Appellate Counsel: Failure to Appeal Trial Court Evidentiary Ruling
After being taken into custody and placed in a vehicle for transport, Brown began to make voluntary, unsolicited comments about his crimes. This continued upon his arrival at the jail, and the following day while being booked. During formal questioning about an unrelated topic, Brown continued to express his willingness to talk. The FBI agents, completely unaware of any link between Brown and a murder in Florida, meticulously informed him of his rights, and validated his waiver of those rights. Brown's written statement indicated that he voluntarily offered the information that he gave, and he signed the statement. Prior to trial, Brown moved to suppress the oral and written statements. At the suppression hearing, the trial judge found that in each instance, Brown's statements were voluntary, that Brown knew of his right to remain silent, that he knew of his right to have an attorney present, and that he waived those rights, having stated that he wanted to talk. Having found that each of Brown's statements was voluntarily rendered, the trial court subsequently admitted the statements against Brown at trial. Brown asserts that appellate counsel's failure to raise the trial court's denial of his motion to suppress his oral and written statements constituted ineffective assistance of appellate counsel.
We find that the trial court conducted a sufficiently detailed inquiry into the circumstances surrounding the rendering of the statements, and that the statements were properly admitted into evidence. Appellate counsel is expected to raise those claims which are deemed to have the most merit, and is not ineffective for failing to raise meritless issues. See Downs v. Moore, 801 So.2d 906, 910 (Fla. 2001). Therefore, appellate counsel's performance did not constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, nor did counsel's failure to raise the instant issue compromise the appellate process to such a degree as to undermine confidence in the correctness of the result. See Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986). As a result, Brown's petition for habeas relief on this basis merits no relief.

CONCLUSION
For the reasons discussed above, we affirm the lower court's denial of Brown's 3.850 motion for postconviction relief and we also deny his petition for writ of habeas corpus.
It is so ordered.
*1129 ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] The court found the following aggravating circumstances: (1) defendant was previously convicted of a felony involving the use or threat of violence to some person (assault with intent to commit armed robbery); (2) the murder was committed while engaged in the commission of a felony (robbery and burglary) and the murder was committed for financial gain, merged; (3) the murder was heinous, atrocious or cruel (HAC); and (4) the murder was cold, calculated and premeditated (CCP).
[2] The court found the following nonstatutory mitigating circumstances: (1) Brown's family background and (2) Brown's alcohol and drug use prior to the commission of the crime.
[3] The issues presented to the trial court in the second amended motion were: (1) newly discovered evidence; (2) change in the law that would be retroactive under Delgado v. State, 776 So.2d 233 (Fla.2000); (3) ineffective assistance of counsel in cross-examination of Scott McGuire; (4) ineffective assistance of counsel in failing to object and preserve for appellate review improper comments and argument made by the State in opening and closing; (5) ineffective assistance of counsel resulting from prejudicial statements made by trial counsel in opening statement; (6) ineffective assistance of counsel through conflict of interest; (7) ineffective assistance of counsel in failing to object and preserve for appellate review improper comments, statements, and opinion or belief of the prosecutor in closing argument; (8) ineffective assistance of counsel in counsel's omissions or failures to make argument in closing argument; (9) ineffective assistance of counsel in rebuttal argument; (10) ineffective assistance of counsel in cross-examination of Robert Childs; (11) ineffective assistance of counsel in failing to take the pretrial deposition of Robert Childs; (12) ineffective assistance of counsel in failing to object and preserve for appellate review inadmissible hearsay testimony of Scott Jason McGuire; (13) ineffective assistance of counsel in failing to object and preserve for appellate review admission into evidence of defendant's confession before the corpus delicti was proved; (14) ineffective assistance of counsel in failing to object and preserve for appellate review the State's use of leading questions in direct examination; (15) ineffective assistance of counsel in failing to object and preserve for appellate review the State's arguments in closing concerning burglary as an underlying felony; (16) ineffective assistance of counsel in failing to request the appointment of associate counsel; (17) ineffective assistance of counsel in failing to object and preserve for appellate review irrelevant testimony of Edward Schlaupitz; (18) ineffective assistance of counsel in cross-examination of State's witnesses; (19) per se ineffective assistance of counsel; (20) ineffective assistance of counsel in making a statement during closing that was highly prejudicial to the defendant; and (21) ineffective assistance of counsel during the direct examination of Scott Jason McGuire by failing to object and preserve for appellate review inadmissible testimony.
[4] Brown invites this Court to apply the standard of per se ineffective assistance of counsel as set forth by the U.S. Supreme Court in U.S. v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, we find that Strickland, not Cronic, is the proper standard for analyzing Brown's claims.
[5] Brown alleges that trial counsel rendered ineffective assistance of counsel for failing to impeach McGuire on the following alleged inconsistencies:

(1) At trial, McGuire testified that after arriving, but before entering Hensley's apartment, Brown said to him: "How would you like to do it?" (referring to "ripping off" Hensley); in his FBI interview, McGuire stated that Brown said "What I thought, you know, we should do," (referring to the employment opportunities the three men were discussing).
(2) In his deposition, McGuire testified that Brown said that he was "dead set against killing him"; in his FBI interview, he stated that Brown said he was "dead set against killing the guy."
(3) At trial, McGuire testified that Brown had a gun behind Hensley's seat while Hensley was driving; in his FBI interview, McGuire stated that Brown never did anything with the gun "but keep it hid."
(4) At trial, McGuire testified that he threw the knife on the ground; in his FBI interview, McGuire stated that he set the knife on the table.
(5) At trial, McGuire testified that he wiped his prints off of the knife; in his deposition, McGuire initially stated that he did not do anything with the knife, but then after being questioned again, stated that he did wipe the prints off of the knife.
(6) At trial, McGuire testified that he saw Hensley on the floor, bloodied; in his deposition, he stated that he saw Hensley half on the bed, half on the floor.
(7) At trial, McGuire testified that Hensley said that he was a homosexual; in his deposition, McGuire said that he thought Hensley said he was bisexual, then admitted it was possible that Hensley said that he was homosexual.
(8) At trial, McGuire testified that he sold Brown the ID card which was recovered by the police in Atlanta; in his deposition, McGuire said that he gave Brown the ID card in exchange for crack.